In re Brenda Johnson
GODLEY, Debtor.

Bankruptcy No. 84–00238–R.

United States Bankruptcy Court,
E.D. Virgina,
Richmond Division.

May 29, 1986.

---

Harry Shaia, Jr., Richmond, Va., for debtor.

B. Randolph Boyd, Richmond, Va., for Ford Motor Credit Corp.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the motion of the debtor in the above-styled case, Brenda Johnson Godley ("Godley"), pursuant to 11 U.S.C. § 350(b) and Bankruptcy Rule 5010 to reopen her case so that she may add two creditors omitted from her original schedules, the creditors being Fruehauf Corporation ("Fruehauf") and Ford Motor Credit Corporation ("FMCC"). A hearing was convened on Godley's motion on April 2, 1986, and FMCC appeared in opposition to Godley's motion to reopen. Fruehauf did not appear, nor did it file a written objection. At the conclusion of the aforementioned hearing, the Court made several findings of fact; however, the ultimate decision as to whether the case should be reopened was deferred pending a review of the law applicable to the relief requested. Consequently, as a result of the Court's review of the relevant law on the matter, the evidence adduced at the hearing, and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Godley filed a petition for relief under Chapter 7 of Title 11 of the United States Code on February 23, 1984, and she received her discharge in bankruptcy on May 22, 1984. Godley's case was subsequently closed by order of this Court entered on February 22, 1985. Prior to the filing of her petition, Godley had been a principal in a corporation known as JerBren Enterprises, Inc. that filed a petition for relief under Title 11 in December 1983. As a principal in the corporation, Godley had personally guaranteed an obligation owing to Fruehauf; however, believing that her entire obligation on the debt would be discharged by listing it in the corporate bankruptcy, Godley omitted it from the schedules in her personal bankruptcy when she filed for relief several months later. Fruehauf has since attempted to collect the debt, totalling approximately $6,500, from her on the personal guarantee.

FMCC, on the other hand, is a creditor of Godley personally only, having a debt owing to it arising from the lease of a Lincoln Town Car automobile. The evidence adduced at the hearing convened on Godley's motion to reopen her case reflected that debt as being approximately $3,300. The evidence further showed that Godley leased the automobile from Whitten Bros., Inc., an automobile dealership located in Richmond, Virginia, in 1983. FMCC provided for the appropriate lease arrangement, and the payments were to be made to FMCC. Godley became delinquent in her lease payments on the vehicle, and Wally Davis, the collections agent testifying on behalf of FMCC, stated that he attempted to contact Godley on several occasions to try and collect her account or have the vehicle surrendered. Davis testified that attempts to locate the automobile were unsuccessful, given that Godley indicated that her father was driving the car in one instance in At-

lanta, Georgia and in another instance in Greensboro, North Carolina. Davis also testified that Godley came in to his office and paid $1,370.77 on her account on February 22, 1984, one day before she filed her individual petition, and the payment brought her account current as of March 1984. Godley made no further lease payments.

When Godley came in to pay the aforesaid arrearage on her account, Davis, who had become aware of the corporate bankruptcy, asked Godley whether she had filed a petition individually. Davis testified that Godley said she had not, and that she stated she would like to retain the car and continue making the lease payments. Davis stated that the reason such an inquiry was made is that it is FMCC's policy of seeking a surrender of its vehicle or a reaffirmation of the obligation immediately upon learning that a debtor has filed a petition for relief under the Bankruptcy Code.

Godley testified that she wanted to retain the automobile leased from FMCC, and she could not recall the conversation with Davis. Godley further indicated that she knew that she was under the obligation to list all her debts in her bankruptcy petition and that she was aware that she should include the debt owed to FMCC; however, she could not explain why she omitted the obligation to FMCC other than by her stated desire to retain the automobile. After her petition was filed, Godley reaffirmed a debt to Commonwealth Propane in order to retain possession of storm windows she had purchased, indicating that she knew the necessity of entering into a reaffirmation agreement with a secured creditor in order not to suffer the loss of the property.

Davis informed Godley by letter dated May 9, 1984 that it had come to FMCC's attention that the collision and liability insurance on the leased vehicle had been cancelled, and he stated in the letter that the vehicle had to be surrendered at his office by May 11, 1984. Davis testified that Godley surrendered the vehicle on May 25, 1984, and upon inspection it was discovered that the automobile was in a seriously deteriorated condition with excessive mileage. The automobile was subsequently sold under the terms of the lease, and a deficiency resulted upon which FMCC has sought to collect. Upon the surrender of the vehicle, FMCC still had not learned of Godley's personal bankruptcy, and Godley made no effort to inform FMCC that she had received a discharge in bankruptcy until FMCC sought to collect the deficiency. FMCC instituted a state court collection action which has been continued pending the resolution of Godley's motion to reopen her estate.

At the conclusion of the hearing on April 2, 1986, the Court made a finding of fact that Godley knew that she had a continuing obligation to FMCC, that she intentionally omitted FMCC from her schedules, and that she deceived FMCC by not informing Davis that she was filing her petition in bankruptcy on the day following her conversation with him. The Court also found that the testimony of Davis was both frank and forthright, and that FMCC had not been informed by Godley of her intention to file her personal bankruptcy.

The Court deferred ruling on Godley's motion to reopen her estate to add FMCC; however, finding no fraud or intent to omit Fruehauf, the Court allowed Godley to reopen her case for the limited purpose of adding that creditor. The Court's reasoning for deferring a ruling on Godley's motion to add FMCC was to allow the opportunity for an inquiry into the relevant law governing the reopening of a closed estate for the purpose of adding an intentionally omitted creditor. In addition, given that Godley's case is a "no-asset" case, and that creditors were notified by the Court pursuant to Bankruptcy Rule 2002(e) on February 29, 1984 that it was unnecessary to file proofs of claim, the Court sought to determine whether FMCC had been prejudiced by Godley's failure to list it as a creditor.

## CONCLUSIONS OF LAW

■ 11 U.S.C. § 350(b) provides that "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." The decision whether to reopen a bankruptcy case to allow a debtor to amend

schedules is within the sound discretion of the bankruptcy court. *In re Rosinski,* 759 F.2d 539 (6th Cir.1985); *Hawkins v. Landmark Finance Co.,* 727 F.2d 324 (4th Cir. 1984); *Matter of Stark,* 717 F.2d 322 (7th Cir.1983).

Although authority exists for the position that a no-asset bankruptcy case may not be reopened in order to list inadvertently omitted creditors, *see e.g., Milano v. Perrone,* 157 F.2d 1002 (2nd Cir.1946); *In re Swain,* 21 B.R. 594 (Bankr.D.Conn. 1982); more recent authority has allowed reopening where the creditor has not been prejudiced, and where there is no evidence of a debtor's fraud, intentional omission, and reckless disregard for the accuracy of the schedules. *In re Gray,* 57 B.R. 927, 931 (Bankr.D.R.I.1986); *Rosinski,* 759 F.2d at 541; *Stark,* 717 F.2d at 324; *see In re Crum,* 48 B.R. 486 (Bankr.N.D.Ill.1985); *In re Zablocki,* 36 B.R. 779 (Bankr.D.Conn. 1984); *In re Davidson,* 36 B.R. 539 (Bankr. D.N.J.1983). Moreover, the Circuit Courts in *Rosinski* and *Stark* have not required that there be a showing of fraud, intentional design *and* prejudice, but, rather, if the grounds exist alternatively, the debtor's motion to reopen may be denied. *Rosinski,* 759 F.2d at 541; *Stark,* 717 F.2d at 324.

In the instant case, the Court finds that not only has FMCC been prejudiced by the debtor's failure to schedule her liability to this creditor, but Godley blatantly disregarded a known duty to list all her liabilities and she intentionally left this creditor's obligation off of her schedules with the intent to deceive FMCC into thinking that she had not filed, or was not filing, for bankruptcy. As the Court stated from the bench at the close of the hearing on God-

ley's motion to reopen, her statement to Davis one day before the bankruptcy petition was filed that she had not filed was a deception in that she knew at that time that her petition would be filed. Godley's statement was such that it was intended to lull FMCC into foregoing its stated policy of seeking a prompt surrender or reaffirmation of the indebtedness in order for her to continue her uninterrupted use of the automobile. The Court does not believe that there is a significant difference in asking a debtor if she has filed a petition, as opposed to asking if she is going to file a petition if it is done in the immediate future. The distinction, if any, would not relieve the debtor of her obligation to be forthright and honest with her creditors.

█ In addition to the inability to effect reaffirmation of the indebtedness prior to the debtor's discharge, the Court finds that FMCC has also been prejudiced by Godley's continued use of the vehicle for an additional three months as well as the expense FMCC has incurred in pursuing a state court collection action in order to seek recovery of the arrearage caused by Godley's default in the payments and her return of the car in substandard condition. Although some courts have held that the failure to list a creditor in a no-asset case does not significantly prejudice a creditor because it has not lost the right to file a claim against the estate in the event assets are discovered that will be available for distribution,[1] *In re Crum,* 48 B.R. 486 (Bankr.N.D.Ill.1985); *In re Rayson,* 39 B.R. 597, 598 (Bankr.C.D.Cal.1984); *In re Meile,* 36 B.R. 719, 720 (Bankr.S.D.Ill.1984), other courts have found that causing a creditor to expend time and incur legal expenses in a state court collection action

---

1. A debtor in a no-asset case might assert that a court should permit him to add a creditor omitted from his schedules if the time limitations imposed on creditors by 11 U.S.C. § 523(a)(3)(A) and (B) can be met, and, as a consequence, that the debt would be discharged in bankruptcy. If the creditor proceeds only under § 523(a)(3)(A) the creditor likely will ask the court to find the debt nondischargeable because his failure to receive notice of bankruptcy precluded him from timely filing a proof of claim. The debtor would argue the debt would have to be found dischargeable since the time

for filing proofs of claim would not have expired, because creditors received notice of the no-asset status of the case pursuant to Bankruptcy Rule 2002(e) and the filing of claims becomes unnecessary. This would be true in the case *sub judice.* Likewise, if a creditor files a complaint under § 523(a)(3)(B), the debtor would assert that the time limitations contained in Bankruptcy Rule 4007(c) for filing complaints under § 523(a) apply only to § 523(a)(2), (4), or (6), and because there is no express time limitation for creditors to file complaints under § 523(a)(3)(B), the debt should be

constitutes sufficient prejudice to the creditor to warrant a denial of debtor's motion to reopen. *See In re Gray*, 57 B.R. 927, 931 (Bankr.D.R.I.1986); *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 327 (4th Cir.1984); *In re Gilbert*, 38 B.R. 948, 951 (Bankr.N.D.Ohio 1984).

■ The bankruptcy courts must be jealous of the Bankruptcy Code's requirements that debtors file their petitions honestly and in good faith. In fact, Official Bankruptcy Form No. 6 requires the debtor to sign a statement in conformity with 28 U.S.C. § 1746, under penalty of perjury, which provides that the debtor's statement of assets and liabilities is true and correct to the best of the debtor's knowledge. In fact, criminal sanctions exist for knowingly and fraudulently making a false oath under Title 11. *See* 18 U.S.C. § 152. In this case, Godley knew her schedules were not accurate, she intentionally omitted a known creditor, and she deceived that creditor for the express purpose of preventing the creditor from exercising its rights under applicable law, those rights being, among others, seeking a surrender of its collateral or obtaining a reaffirmation of the debt. For those reasons, and the attendant prejudice

to the creditor, Godley's motion to reopen her case to add FMCC as a creditor should be denied.

An appropriate Order will issue.

discharged unless it relates to a § 523(a)(2), (4) or (6) fact pattern. It is true, however, that in a complaint under § 523(a)(3)(B) the creditor may be able to prove the necessary elements of nondischargeablity under § 523(a)(2), (4) or (6) in order to prevail under § 523(a)(3)(B). If the creditor did not in fact have such a case of nondischargeability under § 523(a)(2), (4) or (6) argue that he should be discharged of the debt owed to the omitted creditor because the creditor's rights to file a proof of claim or a complaint relating to dischargeability have been protected by § 523(a)(3)(A) and (B).

Such a technical reading of § 523(a)(3) would seem to require the conclusion that no amendment to the schedules would be necessary at all, because the creditor is protected under subsection 523(a)(3)(A) in that the creditor has not lost the right to timely file a claim if the Rule 2002(e) notice was given to all creditors and issues relating to § 523(a)(2), (4) or (6) can be heard in a complaint under § 523(a)(3)(B). In other words, the strict reading of § 523(a)(3) and Rule 2002(e) would allow a debtor to omit a creditor in a no-asset case because the creditor's ultimate protection exists in § 523(a)(3)(B) to file a complaint to determine dischargeability of its debt, and if the creditor has no cause of

action arising under § 523(a)(2), (4) or (6), harm has not occurred and the exception to discharge of the debt under § 523(a)(3)(B) would not apply.

This would, in effect, give to an intentionally omitted creditor as its only recourse the option of filing a motion to revoke the debtor's discharge under 11 U.S.C. § 727(d). The possibility exists, however, that the time limitations under 11 U.S.C. § 727(e) for filing a motion to revoke discharge may have expired. Thus, the intentionally omitted creditor would essentially have no recourse. Such a result is not intended by the Bankruptcy Code. Had the matter *sub judice* come before the Court on a complaint by the debtor pursuant to 11 U.S.C. § 524(a)(2) to enjoin the state court collection efforts of the creditor its decision should be the same, even though a strict reading of § 523(a)(3), § 524(a)(1) and § 727(b) would seem to say that the debt is discharged, and, therefore, all collection efforts are enjoined. The Bankruptcy Code places a premium on scheduling all creditors, and this apparent aberration in the Bankruptcy Code regarding the scheduling of creditors and the obtaining of a discharge should not allow a debtor to intentionally omit a known creditor.