**In re Robert Calvin WOOLARD, Rebecca Ann Woolard, Debtors.**

**Bankruptcy No. 93–24190–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

June 8, 1995.

---

**6.** Although *Hoffman* involved a chapter 11 bankruptcy, the principle remains true under other methods of discharge.

Joseph T. Liberatore, Marcus, Santoro & Kozak, Portsmouth, VA.

Tom C. Smith, Virginia Beach, VA.

Clinton R. Stackhouse, Jr., Trustee, Stackhouse, Smith & Nexsen, Norfolk, VA.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

The debtors seek to amend the schedules in their closed case to add an omitted creditor, and the creditor has objected. A hearing was held on May 4, 1995, at the conclusion of which the court took the matter under advisement. For the reasons set forth in this opinion, the court concludes that reopening the case to permit the filing of amended schedules is not warranted.

### Findings of Fact

The debtors, Robert C. and Rebecca A. Woolard, filed a joint voluntary petition under chapter 7 of the Bankruptcy Code in this court on August 17, 1993. A year prior to the bankruptcy Mrs. Woolard had requested Theresa Saunders, who was then living in their house (apparently as a boarder, although the record is not clear) to loan her $10,000.00 to help prop up a financially troubled company, Home Maintenance Center, Inc. that she and her husband ran.[1] She promised Ms. Saunders that the money would be paid back by September 1, 1992. Ms. Saunders then wrote a check payable to "HMC" in the amount of $10,000.00 and gave it to Mrs. Woolard. On the schedules of assets and liabilities filed with their bankruptcy petition, Mr. and Mrs. Woolard did not list any liability to Ms. Saunders.

Ms. Saunders testified that she was told by Mr. Woolard that he and his wife intended to file for bankruptcy but would not list Ms.

---

1. The nature of the debtors' interest in the business was not explained on the record. The schedule of assets simply lists a "contingent interest," valued at $1.00, in the stock of the corporation, and there is no reference to the business in the debtors' statement of financial affairs.

Saunders as a creditor.[2] He also told her they would pay her back as soon as Mr. Woolard received a settlement on an automobile accident claim. These statements were made sometime in the period from November to December 1992, approximately eight months before the bankruptcy petition was filed. Based on the unrefuted testimony of Ms. Saunders, the Court finds that her omission from the debtors' schedule of liabilities was intentional.

Ms. Saunders denied knowing that the bankruptcy petition had actually been filed. Mrs. Woolard, to the contrary, testified that Ms. Saunders saw her filling out bankruptcy forms and knew of the bankruptcy filing. Based on the court's ability to observe the demeanor of the witnesses while testifying, the court finds Ms. Saunders's testimony to be the more credible and therefore finds that, while she knew that Mr. and Mrs. Woolard intended to file for bankruptcy at some point, she did not have actual knowledge that they had in fact filed.

Mr. and Mrs. Woolard's case was noticed to creditors as a "no-asset" case, and no bar date was set for filing claims. The bar date for filing complaints objecting to the debtors' discharge under § 727 of the Bankruptcy Code or seeking a determination of nondischargeability under § 523 of the Bankruptcy Code was November 15, 1993. No such complaints were filed, and the debtors received a discharge on December 3, 1993. The trustee filed a report of no distribution on August 9, 1994, and the case was closed on August 31, 1994.

Ms. Saunders was never repaid any portion of the $10,000 loan. In October, 1994, she filed suit against Rebecca Woolard and Home Maintenance Center in the Norfolk General District Court. Mrs. Woolard, although served with the suit, did not appear or defend, and Ms. Saunders obtained a judgment for $10,000.00 plus interest and costs. Ms. Saunders then had a garnishment summons issued against Mrs. Woolard's employer. In response, Mr. and Mrs. Woolard, on March 2, 1995, mailed Ms. Saunders notice of an intent to amend the schedules in their bankruptcy case to add her as a creditor.[3] Ms. Saunders objected, and the matter was set down for hearing.[4]

### Conclusions of Law

■ The issue presented is whether the debtors should be permitted to amend the schedules in their closed no-asset bankruptcy case to add a creditor who was intentionally omitted. This court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). For two distinct reasons, this court concludes that a proper basis does not exist for reopening the case to permit the amendment.[5]

### I.

■ Under Fed.R.Bankr.P. 1009(a), a debtor is permitted to amend any schedule "as a matter of course at any time before the

2. Mr. Woolard was not called as a witness to refute these contentions. Mrs. Woolard testified but did not offer any explanation whatsoever for the omission of the debt to Ms. Saunders from the schedules.

3. As discussed below, the practice in this District allows a debtor to file amended schedules in a closed case without a formal motion to reopen the case if the debtor files an affidavit that the creditor to be added was given 30 days notice of the intended amendment, no objection was filed, and the omission of the creditor was inadvertent.

4. Mrs. Woolard's employer withheld a total of $383.68 from her wages. The Clerk of the Norfolk General District Court, upon being advised by debtors' counsel of the intended amendment to the schedules, forwarded the garnished wages

to the chapter 7 trustee. The Court is not informed as to the disposition of those funds and makes no ruling concerning them.

5. This matter is before the court in an unusual procedural posture. The debtors have not filed a formal motion to reopen their case to add Ms. Saunders as a creditor, but instead merely gave her notice of their intent to file amended schedules. Ms. Saunders objected, and a hearing was set on the objection. At the hearing, debtors' counsel orally agreed that the debtors were in effect seeking to reopen their case under § 350(b), and the court therefore treats the matter as though a formal motion had been filed to that effect.

case is closed." Thereafter, no rule or statute specifically permits amendments to schedules, but 11 U.S.C. § 350(b) provides that "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or for other cause." The Fourth Circuit has held that the decision whether to reopen a bankruptcy case depends on the circumstances of the individual case and is within the sound discretion of the bankruptcy court. *Hawkins v. Landmark Finance Company*, 727 F.2d 324, 326 (4th Cir.1984). *Hawkins*, however, does not provide direct guidance for answering the question at hand, since in that case the debtors were not seeking to add an omitted creditor but rather to file a lien avoidance action with respect to a debt the debtors had erroneously listed as unsecured.

The obvious reason why a debtor would wish to amend the schedule of liabilities to add an omitted creditor is because of the exception in § 523(a)(3) of the Bankruptcy Code for unscheduled debts:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled ... in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debts under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for timely filing and request[.]

Interpreting this provision in the context of a no-asset bankruptcy case has proved to be a surprisingly vexing task, and courts throughout the country have grappled with the problem of whether such a case should be reopened to allow the listing of an unscheduled debt. Unfortunately, no clear consensus has been reached, and two divergent lines of authority have developed. While one approach focuses on the subjective intentions of the debtor in failing to list the creditor and any resulting prejudice to that creditor, the other holds that the debtor's bad faith is irrelevant and that in a no-asset, no bar date case the creditor cannot be prejudiced because whether the debt is scheduled has no effect on its dischargeability.

The principal case in the first line of authority is *Stark v. St. Mary's Hospital (In re Stark)*, 717 F.2d 322 (7th Cir.1983). In that case, the Seventh Circuit held that in a no-asset bankruptcy where proper notice has been given, a debtor may reopen the estate to add an omitted creditor "where there is no evidence of fraud or intentional design." *Id.*, at 323. Subsequently, in *In re Rosinski*, 759 F.2d 539 (6th Cir.1985), the Sixth Circuit held that a debtor may be prevented from amending his schedules only if it can be shown that the creditor was, in some manner, prejudiced or that the omission was "part of a scheme of fraud or intentional design." *Id.* at 541.

A key (and essentially unexamined) assumption of the *Stark* line of cases is that scheduling a liability makes a difference—that is, a debt not listed on a debtor's schedules is not discharged, while, conversely, a debt that is added to the schedules is thereby brought within the scope of the previously granted discharge. It is this assumption that is rejected by a second line of case most clearly exemplified by *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir.1993), and Circuit Judge O'Scannlain's concurring opinion. In *Beezley*, the court held that after a no-asset case is closed, dischargeability is unaffected by scheduling and that amending the schedules would be "a pointless exercise." *Id.* at 1434. *See also, In re Mendiola*, 99 B.R. 864 (Bankr.N.D.Ill. 1984) (debtor's failure to schedule a creditor's claim in a no-asset case did not affect discharge even if the debt was omitted intentionally); *In re Hunter*, 116 B.R. 3, 5 (Bankr. D.D.C., 1990) (because adding a creditor at some later date has no affect on the dischargeability of the creditor's claim, scheduling the debt "is for all practical purposes a useless gesture"); *In re Thibodeau*, 136 B.R.

7, 10 (Bankr.D.Mass.1992) (refusing to grant "meaningless reopening"). *But see, In re McKinnon*, 165 B.R. 55, 57–58 (Bankr. D.Maine 1994) (agreeing that scheduling the debt has no immediate effect on dischargeability but noting it would be significant if the case were subsequently reopened to administer previously undiscovered assets and notice given at that time for the filing of claims).

The clearest exposition of why belated scheduling of an omitted debt has no effect on dischargeability in a no-asset, no bar date case is set forth in Judge O'Scannlain's concurring opinion in *Beezley*, and there would be no point in attempting to improve upon his analysis. To summarize, § 523(a)(3) of the Bankruptcy Code excepts an unlisted debt from discharge only when the failure to schedule the debt in a timely manner has prevented the creditor from filing a timely proof of claim or—if the debt is of the type specified in § 523(a)(2), (a)(4), or (a)(6) of the Bankruptcy Code[6]—from filing a timely request to determine dischargeability. In a "no-asset" case, typically no bar date is set for filing claims, and § 523(a)(3)(A) "is simply not implicated 'because there can never be a time when it is too late to permit timely filing of a proof of claim.'" *Id.* at 1436. If the omitted debt is *not* of the type specified in § 523(a)(2), (a)(4), or (a)(6), the creditor has not been deprived of the right to file a timely complaint to determine dischargeability, and § 523(a)(3)(B) is not implicated either. Since neither of the events specified in § 523(a)(3) has occurred—that is, the omitted creditor has not been deprived of the right either to file a timely proof of claim or to file a timely nondischargeability complaint—and since the plain language of the statute requires that the creditor have been deprived of one or the other of those rights in order for the debt to be excepted from discharge, it necessarily follows that the omitted debt has been discharged. By contrast, if the omitted debt *is* of the type specified in § 523(a)(2), (a)(4), or (a)(6), then adding it to the schedules after the deadline for filing a nondischargeability complaint has

expired cannot make the debt dischargeable, since under the plain language of § 523(a)(3)(B) such debts are excepted from discharge. *Id.* at 1437. What is more, the debtor, by failing to list the debt in a timely manner, forfeits the protection of § 523(c) of the Bankruptcy Code and Fed.R.Bankr.P. 4007(c) which permit only the Bankruptcy Court to determine if the debt falls within the ambit of § 523(a)(2), (a)(4), or (a)(6) and imposes a strict deadline for filing such complaints. *Id.* at 1441.

The Fourth Circuit has not ruled on this issue. Within this circuit, some bankruptcy courts have followed the approach espoused in *Stark* and *Rosinski*—that whether or not a debtor's case should be reopened depends on whether the debtor's failure to schedule the debt was inadvertent or intentional. In *In re Godley*, 62 B.R. 258 (Bankr.E.D.Va. 1986), for example, Judge Shelley of this court held that a debtor's intentional omission of a creditor prejudiced the creditor, thereby precluding the court from allowing the debtor to reopen the case to add the creditor. Other bankruptcy courts in this circuit, however, have taken the opposite tack by adopting the rationale set forth in *Beezley*. For example, in *In re Stecklow*, 144 B.R. 314, 315 (Bankr.D.Md.1992), the court held that the debtors would not be permitted to reopen their no-asset chapter 7 case to add previously unscheduled and unnoticed creditors because "the creditors' claims sought to be added to the debtors' schedules have either been discharged by virtue of 11 U.S.C. § 727(b) or excepted from discharge by virtue of 11 U.S.C. § 523(a)(3)(B) and (c)(1) and Fed.R.Bankr.P. 4007(c). No change could be effected by the proposed addition." Similarly, Bankruptcy Judge S. Martin Teel, of the District of Columbia, sitting by designation in the Eastern District of Virginia, reached the same conclusion in *In re Showalter*, Va. Lawyers Weekly, Mar. 7, 1994 at 1, Bankr.E.D.Va. No. 91–13947–AB (Feb. 4, 1994) and *In re Walters*, No. 93–10610–AB (Bankr.E.D.Va. Feb. 16, 1993).

---

**6.** Such debts include those arising from false pretenses, false representations, actual fraud, false written financial statements, fraud or defal-

cation while acting in a fiduciary capacity, embezzlement, larceny, or willful and malicious injury.

■ The practical difficulty, however, with refusing to reopen a closed case to add an omitted creditor is that many collection attorneys, and a significant number of state court judges, assume that a debt not listed on a debtor's schedules is *per se* excepted from the debtor's discharge, and that the best evidence the debt was discharged is a copy of the discharge order and the debtor's filed schedules listing the debt. Primarily as a response to such pragmatic concerns, this district has informally adopted a practice of permitting a debtor to file amended schedules in a closed no-asset case without filing a formal motion to reopen the case if the debtor first files an affidavit certifying (1) that the creditor to be added was given 30 days notice of the intended amendment and did not file an objection to said amendment; (2) that the debtor did not intentionally omit the creditor from the original schedules; and (3) that the debtor did not intend to hinder, delay or defraud the creditor. If the creditor objects, as here, the matter is set down for a hearing. Otherwise, the clerk simply files the amended schedules in the closed case.[7]

## II.

Based on the facts and circumstances of the present case, this court determines that reopening of the debtors' case is not warranted by either the *Stark* or *Beezley* lines of authority. Based on the testimony presented, this court has found that the debtors, Mr. and Mrs. Woolard, intentionally omitted Ms. Saunders from their schedules. Clearly, under the reasoning set forth by *Stark* and *Godley* the Woolards did not file their petition honestly, and their motion to reopen must be denied. "The bankruptcy courts must be jealous of the Bankruptcy Code's requirements that debtors file their petitions honestly and in good faith. In fact, Official Bankruptcy Form No. 6 requires the debtor to sign a statement in conformity with 28 U.S.C. § 1746, under penalty of perjury, which provides that the debtor's statement of assets and liabilities is true and correct to the best of the debtor's knowledge. In fact, criminal sanctions exist for knowingly and

fraudulently making a false oath under Title 11." *In re Godley,* 62 B.R. at 262.

The Woolards' motion to reopen their bankruptcy case must also be denied in accordance with the *Beezley* line of cases. The notice to creditors of the commencement of this case directed creditors not to file a proof of claim and advised that if assets were discovered from which a dividend could be paid, a notice to file claims would be given at that time. This notice operated as an exception to the general rule requiring proofs of claim to be filed within 90 days after the first meeting of creditors. Accordingly, if Ms. Saunders's claim is *not* of the type specified in § 523(a)(2), (a)(4), or (a)(6), it has already been discharged. If it *is* of the type specified in § 523(a)(2), (a)(4), or (a)(6), it has not been discharged. In either event, nothing is accomplished by reopening the case to file an amended schedule adding the omitted debt, and the court declines to do so.

Such a holding does not deprive the debtors of the benefit of their discharge if the debt owed to Ms. Saunders is not of the kind specified in § 523(a)(2), (a)(4), or (a)(6). As noted by Judge Teel in *Walters, supra,* there are several avenues of relief potentially open to a debtor who has failed to list a creditor in a no-asset case:

The debtor is entitled to assert his discharge as a defense to any collection action by the creditor, assuming the debt is not of a nondischargeable character ... as [of a] kind specified in 11 U.S.C. § 523(a)(2), (4) or (6) or under some other § 523(a) exception to discharge. Unless the creditor is suing on the basis that the claim is nondischargeable under some provision of 11 U.S.C. § 523(a), the suit against the debtor violates the discharge injunction. If the creditor continues to pursue the action, despite the debt's dischargeable character, the debtor may file a motion to reopen the case to prosecute a motion to hold the creditor in contempt of the discharge injunction. The debtor might also seek to reopen the case to file a complaint to determine whether the debt is nondischarge-

---

7. Such filing satisfies the concern expressed in *McKinnon, supra,* in the event the case were to

be subsequently reopened to administer newly-discovered assets.

able, *e.g.* under 11 U.S.C. § 523(a)(3)(B) as of a kind specified in § 523(a)(2), (4) or (6). Slip op. at 1–2. Thus, *the debtors are free to assert their discharge as a defense in the state court if Ms. Saunders attempts to enforce her judgment by levy or garnishment.*[8] Ms. Saunders may enforce her judgment only if she can show that the debt owed to her is of the kind specified in § 523(a)(2), (a)(4), or (a)(6); otherwise, any collection action violates the discharge injunction. If there is a dispute as to whether the debt falls within one of the excepted categories, the state court has both the jurisdiction and the duty to decide the issue. Alternatively, either the debtors or the creditor could request that the bankruptcy case be reopened for the purpose of filing an adversary complaint in this court to obtain an authoritative determination as to whether the debt has been discharged. The only potential remedy mentioned in *Walters* that may not be available to the debtors in this case is a motion to hold Ms. Saunders in contempt for violating the discharge injunction if she pursues collection action. That is, where a debtor has intentionally failed to list a creditor, it would ordinarily seem an inappropriate exercise of the court's equitable powers to provide a forum for holding the creditor in contempt. Since, however, no such motion is presently before the court, it is unnecessary to decide at this time whether the conduct of the debtors is such as to preclude a motion for contempt if Ms. Saunders improperly pursues collection action.

### III.

Although in this case the court reaches the result that logically follows from Circuit Judge O'Scannlain's analysis in *Beezley* and Judge Teel's order in *Walters*, the court reserves for a case in which the issue is square-

ly presented a decision on the unsettled question of whether an omitted creditor can, consistent with the Due Process Clause of the Fifth Amendment to the United States Constitution, be deprived of an opportunity to object to a debtor's discharge under § 727 of the Bankruptcy Code. See, *Ford v. Ford (In re Ford)*, 159 B.R. 590, 593–594 (Bankr. D.Ore.1993) (debt held not discharged when creditor who could have successfully challenged debtor's discharge was not given notice until time for contesting discharge under § 727 had expired).

Because Judge O'Scannlain asserts in *Beezley* that the "fundamental right" for most creditors in the bankruptcy process is simply to file a proof of claim and to "participate in any distribution of the assets of the estate," 994 F.2d at 1433, he gives no weight to the importance of the relationship between the creditors and the trustee in assuring the efficient and proper administration of the bankruptcy process.[9] Consequently, he fails to consider the issue of the creditor who is not listed—not because the particular debt would be nondischargeable—but because the creditor simply knows too much about the debtor's affairs. In *In re Henson*, 70 B.R. 363, 364 (Bankr.N.D.Ill.1987), Judge DeGunther remarked: "Bankruptcy courts have long been troubled by the problem of the 'Unlisted Creditor' ... One does not need to be totally cynical to recognize that there may be reasons a Chapter 7 debtor would prefer not to list a particular creditor." One possible reason, for example, is that the creditor knows of assets that have been hidden from the bankruptcy trustee. Another possibility is that the creditor knows of conduct on the part of the debtor that would result in a denial or revocation of discharge under § 727.[10] Since however, Ms. Saunders has

---

**8.** If the judgment has been docketed, § 8.01–455, Code of Va. (1950, as amended) provides a summary procedure whereby a judgment debtor, on motion and 10 days notice to the judgment creditor, may have the judgment marked "discharged in bankruptcy" if it is "shown to have been so discharged."

**9.** "Congress has expressly disapproved the importation of equitable notions of a ... creditor's fair opportunity to participate in the bankruptcy

process into the interpretation and analysis of § 523(a)(3)." 994 F.2d at 1439, n. 4.

**10.** Section 727(d) allows a bankruptcy court to revoke a previously granted discharge if such discharge was "obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." This provision, however, is limited by § 727(e), which requires that requests for the revocation of a discharge be made within one year after such discharge is granted. In the

neither asserted nor shown that she could have successfully objected to the Woolards' discharge under § 727 had she been timely listed as a creditor, the court is not required in the context of the present motion to determine whether procedural due process concerns would prevent her debt from being discharged.

### IV.

As a final matter, at the conclusion of the hearing, Ms. Saunders' counsel orally moved that any order entered by this court refusing leave to amend the schedules also explicitly declare the debt to be nondischargeable. As discussed above, the debt is not excepted from the discharge previously entered solely on the ground it was not listed on the debtors' schedules, even though the omission was intentional. Whether the debt has been discharged depends on whether it is of the kind specified in § 523(a)(2), (a)(4), or (a)(6) of the Bankruptcy Code. No evidence was presented on this point, and in any event under Fed.R.Bankr.P. 7001, a proceeding to determine the dischargeability of a debt or to obtain a declaratory judgment relating to the dischargeability of a debt must be brought by an adversary proceeding. Nothing in this opinion, therefore, should be construed as a ruling on the dischargeability of the judgment obtained by Ms. Saunders.

A separate order will be entered denying the debtors' motion to reopen their case to add Ms. Saunders as a creditor without prejudice to the right of either party to move to reopen the case for the purpose of filing an adversary complaint to determine whether the debt has been discharged.

instant case, more than one year elapsed between debtors' discharge and the notice to Ms. Saunders. In *Ford, supra,* the court found that the omitted creditor could have successfully contested the debtor's discharge, but that the debtor "by concealing his bankruptcy from the plaintiff for a long-enough period of time, assured his discharge would be incontestable on the basis of fraud. That concealment also deprived the plaintiff of any opportunity to protect her debt by challenging the debtor's discharge." 159 B.R. at 593.