**In re James A. ALEXANDER, III, Debtor.**

No. 97–26106.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

March 4, 2003.

Peter McBride, Kreger & McBride, Chesapeake, VA, for Debtor.

### MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Chief Judge.

On September 19, 2002, debtor filed a motion to reopen his chapter 7 case for the sole purpose of discharging an unscheduled pre-petition debt to Horizon Aviation of Virginia, Inc., in the amount of $22,239.53.

At hearing on November 5, 2002, the court took the motion under advisement and asked the parties to submit memoranda with supporting authority. Pursuant to the court's recusal order of December 20, 2002, the motion was referred to the Richmond Division.

For the reasons stated in the opinion, debtor's motion to reopen his chapter 7 bankruptcy case will be denied.

### Findings of Fact.

Debtor James A. Alexander III incurred a debt to Horizon Aviation of Virginia, Inc., in the amount of $22,239.53 on October 19, 1996. The debt was incurred by debtor's charter of an aircraft for a weekend trip from Norfolk, Virginia, to Las Vegas. Debtor's position, asserted in subsequent litigation brought by Horizon, is that he had a misunderstanding with Horizon over the cost of the charter and that he thought the charge would be approximately $2,400.00.

On August 21, 1997, debtor filed a chapter 7 petition in the Norfolk Division of this court. He was represented in the bankruptcy by the law firm of Kreger & McBride. Debtor's § 341 meeting of creditors was held on September 25, 1997, and he received his discharge in bankruptcy pursuant to 11 U.S.C. § 727(b) on December 4, 1997. Debtor failed to list the debt to Horizon in his bankruptcy schedules, and Horizon was not aware of the bankruptcy.[1] At the time debtor filed bankruptcy, Horizon was his largest single creditor. Debtor's bankruptcy case was closed by the clerk as a no-asset case in 1998.

---

1. Debtor has characterized his omission of Horizon as inadvertent. *See Mot. to Reopen,* at

2.

In 1998, Executive Fliteways, Inc., owner of the aircraft chartered by debtor, sued Horizon in Virginia Beach Circuit Court to recover charges related to debtor's flight. In this suit debtor was named as a party defendant, and he was represented by his counsel, Kreger & McBride. Debtor testified in discovery that there had been a misunderstanding over the amount of the charge. This suit was later dismissed (non-suited) by the plaintiff.

On December 27, 2000, Horizon filed a lawsuit against debtor in the Virginia Beach Circuit Court for the purpose of reducing its claim to judgment. That case was tried in January 2002, and the state court rendered judgment for Horizon on March 26, 2002, in the amount of $22,239.53 plus interest. In this law suit debtor was represented by his prior counsel Kreger & McBride.

During the pendency of the two state court law suits over debtor's obligation to Horizon, neither debtor nor his counsel ever advised Horizon of debtor's bankruptcy filing in 1997. Thus Horizon did not learn of the bankruptcy until after its judgment of March 26, 2002.

### Debtor's Amendment of Schedules and Motion To Reopen Case.

On April 22, 2002, debtor by his counsel Kreger & McBride filed in this court a Certificate and Affidavit for Adding Creditors to Schedules in Closed Case along with amended schedules in the case. The only amendment was to add Executive Fliteways, Inc., as an unsecured creditor holding a claim for breach of contract in the amount of $30,000.00.

On April 30, 2002, debtor's counsel filed with the clerk another Certificate and Affidavit to add creditors in his bankruptcy case with another set of amended schedules. This amendment added the unsecured judgment claim of Horizon Aviation, stated to be as follows: "$35,700.00; 30,-000.00 not added to total since claim is joint with Executive Fliteways Inc.'s claim."

Prior to debtor's filing amended schedules with the court, he had sent to Horizon's counsel a notice stating debtor intended to add the claims of Horizon Aviation and Executive Fliteways to his schedules. According to the notice,

If no objection is filed within thirty (30) days of the date of service of this Notice an affidavit will be filed and the case will be reopened and this debt will be amended into the petition and all dischargeable debts will be discharged.[2]

On April 9, 2002, Horizon's counsel responded to debtor's notice by filing an objection and motion to dismiss. Among other things, Horizon asserted that debtor was guilty of bad faith and of laches for having waited four and one half years to amend his schedules and that debtor's failure to give Horizon notice of the bankruptcy had caused Horizon to incur substantial fees and costs in attempting to collect its debt.

Hearing on Horizon's objection and motion to dismiss was held on May 21, 2002. At hearing, Judge Adams stated that there was nothing for him to act upon because the case was closed. No order was entered by the court resulting for the hearing.

On September 19, 2002, debtor filed a motion to reopen his bankruptcy case for the purpose of filing a complaint to determine the dischargeability of his debt to Horizon, and on November 18 he filed a separate memorandum in support of the

---

2. It appears from the case file that debtor's counsel did not send a copy of this notice to the court but that a copy was filed in open court at hearing on May 21, 2002.

motion. Horizon's response and opposition to the motion was stated in a letter to Judge Adams received by the court on November 19.

*Discussion And Conclusions of Law.*

Debtor moves the court to reopen his no-asset chapter 7 bankruptcy case that was closed in 1998 after he received a discharge in bankruptcy. The issues raised by the motion have been caused by debtor's failure to schedule his indebtedness to Horizon Aviation at the time he filed bankruptcy and further by his failure to notify Horizon of the bankruptcy for several years thereafter despite the fact that the parties were in litigation over the debt.

■ Debtor's omission of the Horizon claim from his bankruptcy petition was a plain violation of Bankruptcy Code § 521(1), which requires a debtor to file a list of all creditors. The schedules were signed by debtor under oath on forms that make no room for a selective listing of debts.

Debtor was represented by the same counsel in the bankruptcy and throughout the subsequent litigation, and his apparent irresponsibility in failing to notify Horizon of the bankruptcy presents the court with a procedural dilemma. Fortunately, the court has the guidance of decisions from a number of courts that have considered similar issues.

Debtor's motion to reopen states that it is for the purpose of filing a dischargeability complaint. However, the motion seems to be aimed at merely amending the bankruptcy schedules to add Horizon's claim (along with the related claim of Executive Fliteways, Inc.). Debtor has cited no case authority bearing on the dischargeability of an unscheduled debt. The principal issue chosen by counsel for both debtor and Horizon is whether the court should grant the motion to reopen the case at this late date, and their main concern is whether the doctrine of laches precludes amendment of debtor's bankruptcy schedules. From all the court can glean from counsels' argument, they assume that reopening the case may result in the court's ordering Horizon's claim to be added to the schedules, and this in turn will add the claim to debtor's 1997 discharge in bankruptcy.

The court believes counsels' argument misses the point. The first issue here concerns the effect of debtor's omission of the Horizon debt in his bankruptcy petition. The court must next consider the effect of Horizon's post-petition judgment. When these issues are resolved, it will be seen that reopening debtor's bankruptcy case would have no impact on the discharge of Horizon's claim.

### Reopening Closed Bankruptcy Case.

■ Under 11 U.S.C. § 350(b), a bankruptcy court may reopen a closed case "to administer assets, to accord relief to the debtor, or for any other cause." The decision to reopen a bankruptcy case is within the discretion of the court. *Stackhouse v. Plumlee (In re Plumlee)*, 236 B.R. 606, 610 (E.D.Va.1999). In discussing the gravity of reopening a bankruptcy case, the Fourth Circuit has stated that

> re-opening defeats one of the major purposes of the Bankruptcy Act; to stabilize an insolvent debtor's financial position at the time of the filing of the petition, to relieve him of his existing financial burdens, and to provide his then assets for the relief of his creditors. Re-opening removes the element of certainty from the adjudication and settlement of the estates. It is as essential to the creditors as it is desirable to the bankrupt that this element of certainty

be destroyed *only for the most compelling cause.*

*Reid v. Richardson* 304 F.2d 351, 355 (4th Cir.1962) (emphasis added). Ordinarily, for a court to grant a motion to reopen, the moving party must demonstrate that there is cause. There is no cause if reopening would serve no purpose.

Horizon's counsel has argued in its letter to the court of November 19, 2002, that the doctrine of laches should preclude the court from reopening the case. Because the court denies reopening, there is no basis to consider this argument.

### Effect of Debtor's Failure To Schedule Claim.

In his 1997 bankruptcy petition, debtor failed to schedule any debt owed either to Horizon Aviation or Executive Fliteways arising from the aircraft charter. A logical first question is whether debtor's omission was intentional. Because the debt represented debtor's largest debt at the time and because debtor failed to disclose his bankruptcy to Horizon in subsequent litigation, Horizon argues that debtor's failure was intentional. Debtor asserts in his motion to reopen that the omission of the claim was "inadvertent." While Horizon's argument has the merit of common sense, the question of debtor's intent remains unresolved by the present record. However, in this court's approach, debtor's intent has no bearing on the final outcome.

For a thorough analysis of the issues raised by debtor's motion, the court need look no further than the opinion of Judge Mitchell in a case out of the Norfolk Division of this district, *In re Woolard,* 190 B.R. 70 (Bankr.E.D.Va.1995). *Woolard* involved a debtor who intentionally omitted a creditor from his bankruptcy schedules and after the creditor obtained a judgment and garnishment sought to reopen his closed case to schedule the claim. Judge Mitchell noted that there are two diver-

gent lines of authority on the effect of an omission of a creditor from the bankruptcy schedules, and he held that under either view the closed case would not be reopened. *Id.* at 75. Other decisions that have been followed by the courts of this district include *In re Showalter,* No. 91–13947–AB, 1994 WL 876416 (E.D.Va. Feb. 4, 1994); *In re Stecklow,* 144 B.R. 314 (Bankr.D.Md.1992); *In re Hunter,* 116 B.R. 3 (Bankr.D.D.C.1990).

One of the two lines of authority on the effect of an unscheduled claim in a chapter 7 bankruptcy is an equitable approach that applies general principles of bankruptcy law, and the second line applies a mechanical or plain language approach. *See In re Cruz,* 254 B.R. 801, 807–809 (Bankr. S.D.N.Y.2000) (providing a detailed discussion of the equitable versus the mechanical approach); *accord, Judd v. Wolfe (In re Judd),* 78 F.3d 110, 116 (3d Cir.1996). Only the equitable line of authority is concerned with a debtor's subjective intent in omitting a claim.

Courts applying the equitable approach allow a debtor to reopen a closed case to add an omitted creditor and effectively hold that amendment of schedules allows discharge of the previously unscheduled debt. *See Stark v. St. Mary's Hosp. (In re Stark),* 717 F.2d 322, 324 (7th Cir.1983) (holding that a chapter 7 no-asset case may be reopened and an omitted debt scheduled "where there is no evidence of fraud or intentional design"). The court noted that the creditor was not harmed by the omission and had not forfeited any "benefits" under the Code. *Id.; see also Rosinski v. Boyd (In re Rosinski),* 759 F.2d 539, 541 (6th Cir.1985) (debtor may not amend schedules if creditor prejudiced); *Robinson v. Mann,* 339 F.2d 547 (5th Cir.1964) (allowing amendment of schedules in exceptional circumstances

based on the bankruptcy court's exercise of its equitable discretion).

Judge Shelley of this district adopted the equitable approach in *In re Godley*, 62 B.R. 258 (Bankr.E.D.Va.1986), and denied a debtor's motion to reopen where the creditor's claim had been intentionally omitted, and the creditor had been prejudiced. The effect of this ruling was to deny a discharge of the unscheduled claim. I am aware of no other case in this circuit adopting this approach.

The mechanical approach to the treatment of unscheduled debt relies upon the plain language of the discharge provisions of Bankruptcy Code §§ 523(a)(3) and 727(b). Courts adopting the mechanical approach have criticized the equitable line of authority because that line considers general equitable factors rather than the text of the Code.

Section 727(b) defines the scope of a debtor's discharge, providing that "a discharge under [§ 727(a)] . . . discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . ." 11 U.S.C. § 727(b). "All" is the key word. The statute is unambiguous in that it "discharges every prepetition debt, without regard to whether a proof of claim has been filed . . .," *Zirnhelt v. Ma-*

*daj (In re Madaj)*, 149 F.3d 467, 469 (6th Cir.1998), and does not distinguish "between scheduled and nonscheduled debts." *Karras v. Hansen (In re Karras)*, 165 B.R. 636, 638 (N.D.Ill.1994); *see also Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1434 (9th Cir.1993) (per curiam) (O'Scannlain, J., concurring) (stating that section 727 says nothing about "whether the debt is or is not scheduled").

The only exceptions to discharge for unscheduled debt are found in two subparagraphs of § 523(a)(3)[3], and these exceptions are tied to whether an unscheduled creditor receives notice or has actual knowledge of the bankruptcy in time to file a timely proof of claim or to file a dischargeability complaint. To simplify, § 523(a)(3)(A) excepts from discharge an unscheduled debt where the omission prevents the creditor from filing a timely proof of claim. Additionally, § 523(a)(3)(B) excepts from discharge an unscheduled debt that falls within one of the exceptions to discharge specified in § 523(a)(2), (4) or (6) if the omission prevents the creditor from filing a timely proof of claim and a timely request for determination of dischargeability under one of these sections.[4] *See In re Woolard*, 190 B.R. at 74.

---

3. Section 523 states that:

   (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—

      (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

      (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

      (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsec-

tion, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . . .

4. Section 523(a) excepts from discharge debts based on (2) false pretenses, fraud and false financial statement, (4) fraud and defalcation, embezzlement or larceny, and (6) willful and malicious injury. There are other exceptions to discharge under § 523(a) that may be brought outside the time limitations applicable to these subsections. Also, as a practical matter, where a creditor has not received notice of a bankruptcy the court will usually

■ The final aspect of the equitable approach considers two distinguishing characteristics of a chapter 7 no-asset case: 1) there are no funds to be distributed to the creditors; 2) there is no claim filing period. *See, e.g., Karras,* 165 B.R. at 638. In a case with funds for distribution to creditors, notice allows creditors to exercise their right to file a proof of claim on the debts owed to them. In a no-asset case, unscheduled creditors suffer no prejudice from their omission because "the time for filing a claim has not, and never will, expire unless some exempt assets are discovered. . . ." *Judd v. Wolfe (In re Judd),* 78 F.3d 110, 114 (3d Cir.1996). As a result, § 523(a)(3), regarding notice in time to permit filing of a proof of claim, is never implicated, and creditors never lose their right to file a proof of claim. *See Karras,* 165 B.R. at 638. Addressing the issue of prejudice to an omitted creditor, the Third Circuit stated in *Judd* that

> where there are no assets to distribute . . . the right to file a proof of claim is a hollow one. An omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim.

*Judd,* 78 F.3d at 115.

As stated, courts applying the mechanical approach follow the plain language of §§ 727(b) and 523(a)(3) and hold that unscheduled debt is discharged by operation of law and that reopening a case to schedule a debt would have no affect on its dischargeability. *See Judd,* 78 F.3d 110; *Zirnhelt v. Madaj (In re Madaj),* 149 F.3d 467 (6th Cir.1998); *Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433 (9th Cir.1993) (per curiam); *In re Cruz,* 254 B.R. 801 (Bankr.S.D.N.Y.2000). Accordingly, these cases further hold that

reopening a chapter 7 no-asset case for the sole purpose of adding a previously unscheduled debt is "a useless gesture." *Madaj,* 149 F.3d at 468 (*citing In re Hunter,* 116 B.R. 3, 5 (Bankr.D.D.C.1990)). The rationale behind this statement is that reopening a closed bankruptcy case "to schedule a previously unlisted debt . . . has no effect on the dischargeability of the debt." *Cruz,* 254 B.R. at 809; *see also Judd,* 78 F.3d at 115 (stating that "no purpose" would be served by reopening a case to add an omitted creditor); *Madaj,* 149 F.3d at 468 (calling the effort to reopen and amend schedules in a chapter 7 no-asset case "pointless"); *Beezley,* 994 F.2d at 1434 (finding that amendment would be a "pointless exercise" that would have no effect on the discharge); *In re Cates,* 183 B.R. 723, 725 (Bankr.M.D.N.C. 1995) (reopening a chapter 7 no-asset case to amend schedules does not affect dischargeability "one iota"); *In re Mendiola* 99 B.R. 864, 864 (Bankr.N.D.Ill.1989) (reopening a chapter 7 no-asset case to allow amendment of schedules would be an "exercise in futility").

■ This court finds that the mechanical approach provides the correct treatment of unscheduled debt in a chapter 7 no-asset case. Simply put, scheduled and unscheduled debt is discharged pursuant to §§ 727(b) and 523(a)(3) when the court enters the discharge order unless a debt is excepted from discharge under § 523(a)(2), (4) or (6). Thus the court will not allow reopening for the sole purpose of scheduling an omitted debt but will allow reopening if a party has a basis to file a complaint to determine the dischargeability of the debt. Whether the approach should apply to an intentional omission is discussed below.

on due process grounds allow a late filed

complaint to determine dischargeability.

The judges of this district agreed several years ago that reopening a closed chapter 7 case for the sole purpose of scheduling omitted debt was unnecessary if the omission had been unintentional. Even so, the judges recognized that there was a practical need for debtors to list omitted debt due to the fact that many collection agencies and others believe that listing is necessary for discharge. In light of many reopening requests caused by this practical need, we implemented a procedure that allows debtors to amend their schedules to list *inadvertently* omitted claims. This procedure does not require a case to be reopened, and it will not deal with intentionally omitted claims if the creditor files an objection.

As previously noted, in *Godley* Judge Shelley denied reopening and held that a claim omitted from the debtor's schedules with "intent to deceive" was not discharged. *In re Godley*, 62 B.R. 258, 261 (Bankr.E.D.Va.1986). This was a clear application of the equitable approach to the issue. This court, having adopted the mechanical approach, must decide whether this approach should apply where a debtor intentionally omits a debt.

Other than *Godley*, I am not aware of a case in this district or in the Fourth Circuit that has effectively denied discharge of an intentionally unscheduled debt. In *In re Woolard*, 190 B.R. 70, (Bankr. E.D.Va.1995), which involved an intentional omission, Judge Mitchell did not specifically adopt either the equitable or mechanical approach, ruling that debtor's motion to reopen must be denied under either approach. *Id.* at 73–74. While Judge Mitchell seemed generally supportive of the mechanical approach, he observed that under some circumstances this approach applied across the board might be open to question.

■ I do not disagree that there may be limits to the mechanical approach. Indeed, I recognize that given debtor's conduct here, the discharge of Horizon's debt scarcely seems deserved. Yet the circumstances do not persuade me to depart from the plain language of §§ 727(b) and 523(a)(3) in this case. It is better for the court to apply the statute than substitute my own view of right and wrong. The Bankruptcy Code does not require any showing that a debtor's omission of a debt was made in good faith in order for that debt to be dischargeable. *See Judd v. Wolfe (In re Judd)*, 78 F.3d 110, 116; *see, e.g., Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1439 (9th Cir.1993) (O'Scannlain, J., concurring) ("Nowhere in section 523(a)(3) is the *reason* why a debt was omitted from the bankruptcy schedules made relevant to the discharge of that debt.") (emphasis in original); *Karras v. Hansen (In re Karras)*, 165 B.R. 636, 639 (N.D.Ill.1994) ("Nothing in section 523(a)(3) refers to the debtor's state of mind.").

■ Accordingly, under the circumstances of this case, I find that it makes no difference whether debtor intentionally failed to schedule Horizon's claim of $22,239.53. And because Horizon has not indicated an intention to file a complaint to determine dischargeability, I conclude that Horizon's claim, along with that of Executive Fliteways, was discharged under § 727(b) by the court's discharge order of December 4, 1997.

The court's ruling applies only to Horizon's pre-petition claim. I make no ruling concerning any indebtedness that may have been incurred by debtor to Horizon after August 21, 1997. Also, this ruling is without prejudice to any right of Horizon to raise other issues of dischargeability of its claim pursuant to the Bankruptcy Code.

**658**

### Effect of Horizon's Judgment.

■ The question remains whether the subsequent state court judgment against debtor is valid.

■ Section 524 of the Bankruptcy Code states

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ....

11 U.S.C. § 524(a)(2). Based on the language of § 524(a), "a discharge will be completely effective and will operate as an injunction" that will protect "the debtor from a subsequent suit in a state court ... by a creditor whose claim had been discharged...." 5 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 524.02 (15th ed. rev.2002). Section 524(a) operates "automatically," removing the need for debtor "to assert the discharge to render the judgment void." *Id.* at ¶ 524.02[1]. Further, the code clearly stipulates that any judgment as to a discharged debt is "void and not voidable." *In re Cruz*, 254 B.R. 801, 810 (Bankr.S.D.N.Y.2000); *see also Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 781 (9th Cir. BAP 1999) (holding that "any judgment of any court that does not honor the bankruptcy discharge is 'void' to that extent"); *In re Presley*, 288 B.R. 732, 736–37 (Bankr. W.D.Va.2003) (judgment held void; unlist-

ed creditor had actual knowledge of bankruptcy petition).

Again, the court finds no basis to depart from the plain language of the Code. Although the court is sympathetic to Horizon's position, § 524 renders void Horizon's Circuit Court of Virginia judgment of March 26, 2002.

A separate order will be entered denying the motion to reopen.