**In re Isabel O. MENDIOLA, Debtor.**

**Bankruptcy No. 88 B 03378.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

April 21, 1989.

Mathias & Schmarak, P.C., Sidney H. Mathias, Arlington Heights, Ill., for debtor.

Phillip D. Levey, Chicago, Ill., former trustee.

James S. Laing, Kirkland & Ellis, Chicago, Ill., for creditor.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The motion now under consideration is typical of many filed in this Court. The Debtor seeks to reopen her no-asset Chapter 7 bankruptcy case. The sole purpose for that reopening would be to allow the Debtor to amend her schedules to add the names of creditors who held claims against the Debtor before the bankruptcy case was filed. As is also typical, the Debtor alleges that the omission of these pre-petition cred-

itors from the schedules was inadvertent and innocent. The Debtor believes that reopening the case and amending the schedules is necessary to discharge these debts. The Debtor is wrong in that belief, and, because reopening the case to amend schedules would not affect the rights or liabilities of anyone, but would only be an exercise in futility, the motion will be denied.

The facts in this case are simple. The Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on March 3, 1988. The schedules filed by the Debtor revealed no assets available for distribution to creditors. The Clerk of this Court, in accordance with applicable rules,[1] notified the creditors listed in the Debtor's schedules of the date set for the meeting of creditors and the last day for the filing of complaints to determine the dischargeability of debts under 11 U.S.C. § 523(c) or objections to the discharge of the debtor. The Clerk's notice also advised those creditors that (emphasis added):

> It appears from the schedules of the Debtor that there are no assets from which any dividends can be paid to the creditors, *it is unnecessary for any creditor to file his/her claim at this time* in order to share in any distribution from the estate. If it subsequently appears that there are assets from which a dividend may be paid, creditors will be so notified and given an opportunity to file their claims.

The Court granted the Debtor her discharge, releasing her from pre-petition debts, on June 21, 1988. The trustee appointed in the case discovered no assets and filed a report so stating. The Court approved that report, discharged the trustee, cancelled the trustee's bond, and the case was closed on November 15, 1988.[2]

Thereafter, according to her motion, the Debtor learned of creditors who "were inadvertently omitted from the Schedules."

---

1. See Bankr.Rules 2002(a), (e); 4007(c).

2. 11 U.S.C. § 350(a) provides that, "After an estate is fully administered and the court has discharged the trustee, the court shall close the case."

The Debtor now wants this Court to reopen the case so that she can amend her schedules to add the names of creditors who were not listed on the original schedules.

The only authority for reopening a case is contained in Section 350(b) of the Bankruptcy Code, 11 U.S.C. § 350(b): "A case may be reopened in the Court in which such case was closed to administer assets, to accord relief to the Debtor, or for other cause." There are no assets here to administer. Therefore the only grounds that might exist to reopen this case are "to accord relief to the Debtor, or for other cause."

The Debtor believes that reopening this case will accord her relief. Specifically, the Debtor believes that reopening the case and amending the schedules will bring the debts she intends to list in those amended schedules within the scope of her discharge. She believes that otherwise those debts will not be discharged and the creditors will be able to sue her to collect their debts.

Certainly, the Debtor's discharge is important relief, and many courts have assumed, as the Debtor does here, that debts that are not scheduled are not discharged. Those courts, based upon their assumption about the law of discharge, have allowed reopenings for the benefit of innocent, good faith Debtors. *See, e.g., Matter of Stark,* 717 F.2d 322 (7th Cir.1983); *In re Rosinski,* 759 F.2d 539 (6th Cir.1985); *In re Soult,* 88 B.R. 801 (Bankr.S.D.Ohio 1988). Other courts, making the same assumption that an unscheduled debt is excluded from the Debtor's discharge, have refused to reopen closed cases to permit late scheduling where the court has found "fraud, intentional design or reckless disregard" in the Debtor's conduct. *See, e.g., In re Smith,* 68 B.R. 897, 901 (Bankr.N.D.Ill. 1987); *In re Long,* 93 B.R. 791 (Bankr.M.D. Ga.1988).

A few courts, however, have closely analyzed the language of the Bankruptcy Code and reached the conclusion, with which this Court agrees, that, "[t]he filing of an amended creditor schedule after discharge has been granted in a no-asset Chapter 7 case has absolutely no effect on the dischargeability of debt." *In re Karamitsos,* 88 B.R. 122, 122 (Bankr.S.D.Tex.1988); "[R]eopening a case to allow amendment of schedules is futile. The debt in question was either discharged or excepted from discharge based on an analysis of § 523. Subsequent actions by the debtor cannot affect whether or not the debt has already been discharged." *In re Anderson,* 72 B.R. 495, 497 (Bankr.D.Minn.1987); "[T]he debts which are sought to be added to the schedules by these debtors were, therefore, discharged, even without reopening the case and allowing the requested additions...." *In re Padilla,* 84 B.R. 194, 196 (Bankr.D.Colo.1987).[3] *See also, Norton Bankr. Rules Pamphlet,* 1988–89 ed., Editor's Comment (1983), p. 317 ("The amendment [to the schedules to add a creditor] has no bearing whatsoever on the dischargeability, vel non, of the liability owed to the creditor.")

In order to understand why a debtor does not benefit from the reopening of a closed no-asset case to permit the filing of amended schedules it is necessary to examine the scope of the bankruptcy discharge. Section 727(b) of the Bankruptcy Code, 11 U.S.C. § 727(b), defines the scope of a Chapter 7 debtor's discharge. Under that section, the discharge "discharges the debtor from *all* debts that arose before the date of the order for relief," except as provided in Section 523.

The operative word is "all". There is nothing in Section 727 about whether the debt is or is not scheduled. So far as that section is concerned, a pre-bankruptcy debt is discharged, whether or not it is scheduled. But, by the very terms of Section 727, the discharge is subject to the provisions of Section 523, so we need to look at Section 523 to see if that Section says anything about debts that are not scheduled.

---

**3.** *Padilla* recognized a limited exception to this general rule. The issue to which that exception pertains is discussed in footnote 6, below.

Section 523(a) provides that, "[a] discharge under section 727 ... does not discharge an individual debtor from any debt" described in the ten sub-sections of Section 523(a). 11 U.S.C. § 523(a). Those ten sub-sections describe debts that are excluded from the debtor's discharge, which is otherwise all-inclusive.

Among the debts described in Section 523(a), and thereby excluded from the discharge, are (in very general terms, and omitting the exceptions, conditions and provisos) taxes (subsection (1)), alimony and child support (subsection (5)), fines or penalties (subsection (7)), educational loans (subsection (8)), judgments arising from drunk driving cases (subsection (9)) and debts that existed when the debtor filed a prior bankruptcy case but were for specified reasons not discharged in that prior case (subsection (10)).

There are three other general categories of debt that are not discharged according to Section 523(a), which require some special attention. These are a variety of intentional tort claims, described in sub-sections (2), (4) and (6) of Section 523(a). They include (again, in very general terms) claims arising from false pretenses, fraud or use of false financial statements (subsection (2)); defalcation by a fiduciary, embezzlement or larceny (subsection (4)); and willful and malicious injury (subsection (6)). What is special about these intentional tort claims is that they will be discharged just like any other debt, unless the creditor files a complaint to determine their dischargeability in the bankruptcy court (which has exclusive jurisdiction) within a strict time limit of 60 days after the first meeting of creditors. 11 U.S.C. § 523(c); Bankr.Rule 4007(c). These jurisdictional and time restrictions do not apply to debts described in any sub-sections of Section 523(a) other than (2), (4) and (6). The dischargeability of a debt for taxes or alimony, for example, can be litigated in the state court or the bankruptcy court at any time. *See* R. Ginsberg, *Bankruptcy*, ¶¶ 11,351, 11,352 (1988).

But the immediate question here is, Does any sub-section of Section 523(a) say anything about scheduling debts? Section 523(a)(3) does talk about debts "neither listed nor scheduled." That is certainly the relevant section, but it requires closer examination.[4]

Section 523(a)(3) has two sub-parts, (A) and (B). Sub-part (A) deals with debts that are not the result of the intentional torts (fraud, larceny, wilful and malicious injury, etc.) that are described in subsections (2), (4), and (6). That is, a debt that is not a "(2), (4), or (6)" debt is covered by sub-part (A). This would include debts that are not excepted from discharge by any other sub-section of Section 523, and it would also include debts that are excluded from the debtor's discharge by subsections (1), (5), (7), (8), (9) and (10). That is the scope of sub-part (A).

Assuming that we are dealing with debts that fall within the scope of sub-part (A), a debt must satisfy these conditions in order to fall within that exception to the debtor's otherwise all-inclusive discharge. The debt was "neither listed nor scheduled ... *in time to permit ... timely filing of a proof of claim,* unless [the creditor knew about the case] in time for such timely filing...." 11 U.S.C. § 523(a)(3)(A) (emphasis added).

It is not enough, therefore, that the claim was not listed or scheduled. The key to understanding this subsection is the phrase "timely filing of a proof of claim."

This subsection protects only the creditor's right to file a proof of claim, nothing else. *Stark*, 717 F.2d at 324; *In re Crum*,

---

**4.** Section 523(a)(3) provides:

A discharge under section 727 ... does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

48 B.R. 486, 490 (Bankr.N.D.Ill.1985); *In re Barrett,* 24 B.R. 682, 684 (Bankr.M.D. Tenn.1982). But a proof of claim serves only one purpose in a Chapter 7 case: it is the creditor's assertion of a right to participate in the distribution of the assets of the estate. In a case without assets to distribute the right to file a proof of claim is meaningless and worthless.[5] "The unlisted creditor is not prejudiced by the debtor's failure to list him because he would not have received a distribution anyway." *In re Smolarick,* 56 B.R. 720, 723 (Bankr.W. D.Va.1986).

As Congress anticipated (see footnote #5), the rulemakers did specify the time for filing claims, with appropriate exceptions for no-asset cases, in which filing a claim is useless. The basic rule in a Chapter 7 case is that a "proof of claim shall be filed within 90 days after the first date set for the meeting of creditors...." Bankr. Rule 3002(c). But the general 90 day rule is subject to an exception that, "If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after mailing of the notice." Bankr. Rule 3002(c)(5). Rule 2002(e) provides:

> In a chapter 7 liquidation case, if it appears from the schedules that there are no-assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

This is the notice that was given to scheduled creditors here. Since no assets were ever discovered, no "further notice" was ever given. This 2002(e) notice, therefore, (saying "it is unnecessary to file claims") is the only notice about filing proofs of claim that unscheduled creditors missed.

Reading these rules together, there is no time limit on the filing of proofs of claim in no-asset Chapter 7 cases. "[I]n a no-asset Chapter 7 case, there is never a claim filing period." *Karamitsos,* 88 B.R. at 123. "Because this is a no-asset Chapter 7 case, the time for filing a claim has not, and never will, expire unless some non-exempt assets are discovered." *Padilla,* 84 B.R. at 195–96. *See Stark,* 717 F.2d at 324. Therefore, Section 523(a)(3)(A) is not applicable in a no-asset case, because there can never be a time when it is too late "to permit timely filing of a proof of claim." *See Crum,* 48 B.R. at 490 ("when a no-asset notice has been sent out and no claims bar date has been set, Section 523(a)(3)(A) has not been 'triggered' ".)

Since Section 523(a)(3)(A) does not apply, the debts the Debtor seeks to add to the schedules are already discharged, even though they were not listed or scheduled, unless those debts fall within one of the other exceptions to discharge (such as, for example, the exceptions for taxes or child support). But if the debts do fall within one of those other exceptions, scheduling them will not change that fact. The Debtor cannot change the nature of a debt merely by listing it on a piece of paper.

Similarly, the application of sub-part (B) of Section 523(a)(3) is not affected, one way or the other, by reopening a closed case to permit amendment to the schedules of creditors. That sub-part deals with debts of the type described in subsections (2), (4), and (6) of Section 523(a). That is, the scope of sub-part (B) is limited to the intentional tort debts described in subsections (2), (4), and (6). As noted, those exceptions to dis-

---

**5.** Congress recognized that a proof of claim would be unnecessary in a no-asset case. It permitted, in 11 U.S.C. § 501, the filing of proofs of claims "in a liquidation case where there will be a distribution of assets to the holders of allowed claims. In other instances, such as in no-asset liquidation cases ... filing of a proof of claim may simply not be necessary. The Rules of Bankruptcy Procedure and prac-

tice under the law will guide creditors as to when filing is necessary and when it may be dispensed with." H.R.Rep. No. 95–595 95th Cong. 1st Sess. 351 (1977); S.Rep. 95–989, 95th Cong., 2nd Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5847, 6307 (legislative history to Section 501 of the Bankruptcy Code, which governs the filing of proofs of claims).

charge are treated differently in bankruptcy law. A creditor who claims an exception to the debtor's discharge based on subsections (2), (4), or (6) must, unlike other creditors with allegedly non-dischargeable claims, file a complaint to determine dischargeability in the bankruptcy court within a fixed period of time. Therefore, an intentional tort creditor who did not know about the bankruptcy case in time to file that complaint might be deprived of an important right. It is the purpose of subsection (B) of Section 523(a)(3) to protect against that risk.

In the achievement of that purpose, subpart (B) is applicable only where a debt of the type described in subsections (2), (4) or (6) was neither listed nor scheduled in time to permit the filing of a proof of claim or the filing of a complaint to determine dischargeability, and the creditor did not know about the case within that time. So subpart (B) protects two rights: the right to file a proof of claim and the right to obtain a determination of the dischargeability of a debt in those instances where that right might otherwise be lost by reason of the passage of time. *See, Padilla,* 84 B.R. at 196.[6]

Again, however, scheduling makes no difference to the outcome. "Reopening a case to list a creditor does not extend the time to file complaints to determine dischargeability. Either the creditor had actual, timely notice of the [case] or he didn't. Amending the schedules will not change that." *Karamitsos,* 88 B.R. at 123. The Court cannot extend the time to file complaints to determine dischargeability under Section 523(a)(2), (4) or (6) after that time has passed. *In re Van Cloostere,* 94 B.R. 131, 135 (Bankr.S.D.Ill.1988); *In re Lochrie,* 78 B.R. 257 (9th Cir. BAP 1987).

Reopening this case, therefore, will not accord the Debtor the relief she seeks. Scheduling the debts she wants to schedule will not affect whether or not those debts are discharged. Under Section 727(b), her discharge applies to all pre-petition debts except those that fall within one of the subsections of Section 523(a). Since scheduling a debt does not change the nature of a debt, and since Section 523(a)(3)(A) is inapplicable in a no-asset case, allowing this motion will not convert any non-dischargeable debt into a dischargeable debt.

There are cases, however, that support the granting of this motion, and they must be dealt with. Most important to this Court is the line of authority that begins with the Seventh Circuit's opinion in *Stark.* It is certainly true that *Stark* holds that, "In a no-asset bankruptcy where notice has been given pursuant to 203(b) [the predecessor to Rule 2000(e)], a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design." 717 F.2d at 324. But it is clear from the opinion in *Stark* that the Court assumed that the purpose that would be served by the reopening and addition of the omitted creditor was the discharge of that creditor's claim. The parties to *Stark* agreed to a statement of the case that said that the debtors "sought to have their estate reopened in order that the hospital's debt could be added and subsequently discharged." 717 F.2d at 323. The parties and the lower courts all dealt with the issues as if the debt would not have been discharged unless the case were reopened and the name of the creditor added to the schedules. The Seventh Circuit simply acted on that unchallenged assumption. Thus, the Court approved the district court's conclusion that "section 523(a)

6. Although this court generally agrees with the analysis in *Padilla,* it disagrees with that court's conclusion that dischargeability under Section 523(a)(3)(B) must be determined by the bankruptcy court. *Padilla* reaches that conclusion because Section 523(c) requires that the Bankruptcy Court, and no other Court, determine dischargeability under subsections (2), (4), and (6). That is certainly the general rule of exclusive jurisdiction over subsections (2), (4) or (6) matters. But Section 523(c), by its own terms, does not apply to Section 523(a)(3)(B) claims. Therefore, the exclusive jurisdiction provisions of Section 523(c) are not applicable to the issue of dischargeability under Section 523(a)(3)(B). The time limitation of Bankruptcy Rule 4007(c) is also inapplicable, since that Rule applies only to complaints under Section 523(c), not to complaints under Section 523(a)(3)(B). In effect, a debtor who failed to list a creditor loses the jurisdictional and time-limit protections of Sections 523(c) and Rule 4007(b) with respect to that creditor.

should not be mechanically applied to deprive the Debtor of a discharge in a no-asset case where there is no showing of fraud or genuine harm to the creditors, ... [and] the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice...." *Id.*

It is therefore clear that the holding in *Stark* is that a debtor should be allowed to reopen his or her case, in the absence of fraud or intentional design, in order to obtain the benefits of the debtor's bankruptcy discharge. The Court in *Stark* did not address or decide the question of whether reopening *was* necessary to obtain that benefit, but only assumed that it was. The Seventh Circuit itself recently held that, "A point of law merely assumed in an opinion, not discussed, is not authoritative." *Matter of Stegall*, 865 F.2d 140, 142 (7th Cir. 1989). This Court will not assume that the Seventh Circuit intended to direct bankruptcy courts to engage in exercises in futility. Plainly, if a debtor can demonstrate that his or her discharge would not cover a particular debt unless the case were reopened to add that debt to the schedules, this Court would be compelled under *Stark* to grant that reopening. But in the absence of such a demonstration, *Stark* does not require the case to be reopened.[7]

There is, however, at least one decision that expressly reaches a conclusion different than this Court's, even after consideration of the language of the relevant Code provisions. In *In re Godley*, 62 B.R. 258, 261–62, n. 1 (Bankr.E.D.Va.1986), the court decided that a "technical reading of § 523(a)(3) would seem to require the conclusion that no amendment to the schedules would be necessary at all, because the creditor is protected under subsection 523(a)(3)(A) in that the creditor has not lost the right to timely file a claim if the Rule 2002(e) notice was given to all creditors and issues relating to § 523(a)(2), (4) or (6) can be heard in the complaint under § 523(a)(3)(B)." That is certainly this court's "technical reading." The *Godley* court, however, stated that it did not need to adhere to this "technical reading" because to do so "would allow a debtor to omit a creditor in a no-asset case...." *Id.* The court concluded that "[t]he Bankruptcy Code places a premium on scheduling all creditors, and this apparent aberration in the Bankruptcy Code regarding the scheduling of creditors and the obtaining of a discharge should not allow a debtor to intentionally omit a known creditor." *Id.*

Thus, although Congress in Section 523(a)(3) dealt only with the effect of a debtor's conduct, the *Godley* court reads into that provision, for policy reasons, a special exception based on the debtor's intent. The fundamental problem with the *Godley* court's approach, of course, is that it is for the legislative branch, and not the courts, to make such policy choices and to define exceptions to the debtor's discharge. And the clear language of Section 523(a)(3) is not an aberration, but represents a Congressional policy choice. Congress could have excepted from the debtor's discharge debts that were omitted, intentionally or otherwise, from the schedules. Congress might simply have continued pre-Code law, which was much stricter than the present § 523(a)(3) in that it excluded a debt from discharge "if the objecting creditor did not have either actual or constructive knowledge of the bankruptcy petition in time to

---

**7.** *Stark* has been followed in many other cases in which the discharge issue was similarly not addressed, but merely assumed. *See, e.g., In re Rosinski*, 759 F.2d 539, 542 (6th Cir.1985) ("the *Stark* Court found as a matter of law that a debtor's right to reopen a case in order to obtain a discharge of a debt is paramount under the Bankruptcy Code."); *In re Soult*, 88 B.R. 801, 804 (Bankr.S.D.Ohio, 1988) ("the paramount policy being advanced by *Rosinski* and *Stark* is the bankruptcy debtor's right to obtain a discharge of all pre-petition obligations not otherwise excepted by statute from the effect of the discharge.") *In re Smith*, 68 B.R. 897, 899 (Bankr.N.D.Ill.1987) ("A debtor's goal to be discharged of a debt by adding additional creditors is a proper purpose for a bankruptcy court to reopen a closed case 'to accord relief to the debtor.'") All of these cases, and most of the others that have followed *Stark*, have, like *Stark*, simply assumed, without discussing or deciding, that it is necessary to add creditors to the schedules in order to include those creditor's claims within the scope of a debtor's discharge. If that assumption is incorrect, as this Court believes it to be, those decisions are without any rational foundation, and are no more persuasive than *Stark* is controlling.

permit meaningful participation in the bankruptcy proceeding." *In re Barrett*, 24 B.R. 682, 683 (Bankr.M.D.Tenn.1982). Instead, the legislative history shows that Congress expressly overruled that prior law and created the narrow exception found in § 523(a)(3) that protects only the rights to file claims and certain complaints, but not any other rights to participation in the case. *Id.*

Moreover, even as a policy matter, the *Godley* court's concern, while valid, is inappropriately dealt with in the context of the dischargeability of a single debt under Section 523. As *Godley* itself acknowledges, a creditor omitted from the schedules (whether intentionally or not) in a no-asset case has not been harmed. Yet under *Godley*, a creditor lucky enough to have been intentionally omitted from the schedules gets the windfall of an exception from discharge not available to other creditors.

The policy problem with *Godley's* analysis is that it applies an inappropriate remedy to the wrong committed by a debtor who intentionally falsifies schedules. That wrong is not merely directed against a single creditor, but against all creditors, as well as the court and the process of bankruptcy administration. That sort of a problem is not dealt with by Congress or, usually, by the courts within the framework of Section 523 exclusions of particular debts from the scope of the discharge. Rather, it is dealt with in the context of Section 727, which describes both the discharge and the circumstances under which that discharge can be entirely denied or revoked because of the debtor's misconduct. A debtor who has obtained his discharge on the basis of false schedules should be required to explain why that discharge should not be revoked under 11 U.S.C. § 727(d) on the ground that it was obtained through fraud. *See Barrett*, 24 B.R. at 865.[8]

Finally, although this opinion disposes of the present motion, it is possible the parties will continue to have a dispute concerning the dischargeability of one or more of the debts listed in the Debtor's motion. There are three ways to litigate dischargeability after a case is closed. First, if a creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either the Debtor or the creditor can move to reopen this case for the purpose of filing a complaint to determine dischargeability. Third, the Debtor can bring an action in this Court to enforce the discharge injunction against a creditor attempting to collect discharged claims, which is contained in 11 U.S.C. § 524(a). The virtue of any of these procedures, as opposed to a motion to reopen to amend schedules, is that it will focus on the real dispute (if there is a real dispute) between the parties—the dischargeability of the debt.

For the foregoing reasons, an Order will be entered denying the Debtor's motion to reopen this case.

---

8. *Godley* does suggest this course of action, but then rejects it on the theory that a creditor might not learn about the case until the time to file a complaint to revoke the discharge had passed. Even without considering the possibili-

ty of tolling that time period, that hypothetical situation, which will seldom arise in reality, is little reason to disregard the plain meaning of the Bankruptcy Code.