Industrial Commission Division

March 6, 2000

               Nos. 1-98-0522WC & 1-98-4243WC cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

INDUSTRIAL COMMISSION DIVISION

THOMAS KEARNS
,

Appellant,

v.

THE INDUSTRIAL COMMISSION 
et
 
al
.

(Thomas Hlady, d/b/a Frank Goodness
, Appellee).

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Cook County.

Nos. 97-L-50571

98-L-50183

Honorable

John Ward,

Joanne L. Lanigan,

Judge, Presiding.

JUSTICE COLWELL 
delivered the opinion of the court:

Claimant,
 
Thomas Kearns,
 obtained an arbitration award against respondent,
 
Thomas Hlady 
d/b/a Frank Goodness, for injuries Kearns sustained while working for Hlady.
  Kearns subsequently filed with the Industrial Commission (Commission)
 a motion for 
attorney fees and penalties
 under sections 16 and 19(k) 
of 
the 
Workers̓ Compensation Act (Act)
 (820 ILCS 305/16, 19(k)
 (West 1994))
, alleging that Hlady 
unreasonably and vexatiously refused to pay the award.  
The Commission, however, found that Hlady’s 
Chapter 7
 bankruptcy discharge 
provided him with reasonable basis 
not to pay 
the award
. 
 In 
97-L-50571
, the circuit court of Cook County confirmed the Commission’s
 decision
, and Kearns appeals.  Kearns also appeals from the circuit court’s determination in 
98-L-50183
 
that Kearns’ workers’ compensation claim against Hlady was discharged by the bankruptcy order
.

We agree that Kearns’ claim was discharged by the bankruptcy order and therefore affirm the orders of the circuit court.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Thomas Hlady was the sole proprietor of a fast food restaurant named Frank Goodness.  On August 25, 1988, while working at the restaurant, Kearns was cut with a knife and sustained injuries to his left thumb.  He filed an application for adjustment of claim on April 3, 1989, alleging that he suffered severed nerves, veins and tendons in his left hand as a result of the incident.  On May 24, 1989, Kearns’ attorney sent a certified letter to Hlady notifying him of the pending claim and of a June 6, 1989, arbitration hearing.  The letter was sent to Hlady at 5206 West 159
th
 Street, Oak Forest, Illinois, which was the restaurant’s address.  The return receipt of the letter was signed by “Mary Dwyer” and was dated June 2.  Hlady, however, denies ever receiving the letter.

On November 6, 1989, Hlady filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code (11 U.S.C. §727 (1990)) and subsequently moved to Las Vegas, Nevada, where he currently resides.  He did not list Kearns’ workers’ compensation claim on his bankruptcy schedule.  On February 21, 1990, the United States Bankruptcy Court issued an order releasing Hlady, “AKA Frank Goodness,” from “all dischargeable debts.”  Kearns was never notified of the bankruptcy proceeding.

On March 18, 1993, an
 
ex
 
parte
 arbitration hearing was held on Kearns’ application for adjustment of claim.  Kearns offers no explanation as to why it took so long for the hearing to be held, and the record contains no indication that Hlady was notified of the hearing
.  Kearns was the only person to testify at the hearing.  Following the hearing, the arbitrator found Kearns entitled to eight weeks of temporary total disability benefits, compensation for a 50% loss of the use of his left thumb and $5,679.65 in medical expenses.  Nevertheless, Hlady did not pay the award.  The arbitrator’s decision was mailed to the restaurant’s Oak Forest address, but since the restaurant was out-of-business, and since Hlady was living in Las Vegas, Hlady never received the decision.  The Commission notified Kearns’ attorney by mail that the decision of the arbitrator was undeliverable as addressed.

On March 9, 1995, Kearns filed a motion with the Commission seeking attorney fees and penalties under sections 16 and 19(k) 
of the Act (820 ILCS 305/16, 19(k)
 (West 1994))
 
for 
Hlady’s alleged unreasonable and vexatious nonpayment of the arbitration award.  Hlady filed a response to Kearns’ motion on July 11, 1995.  Citing 
In re Mendiola
, 99 B.R. 864 (Bandkr. N.D. Ill. 1989), Hlady maintained that Kearns’ workers’ compensation claim was discharged by the bankruptcy order of February 1990, even though the claim was not listed on the bankruptcy schedule.

The Commission agreed with Hlady.  Although it found that Kearns “sustained accidental injuries arising out of and in the course of his employment,” the Commission wrote, “In cooperation with the court’s opinion in 
Mendiola
, we find [Hlady’s] bankruptcy discharge assertion constitutes an affirmative defense and provided a reasonable basis for dispute.  We hereby deny [Kearns’] Motion for Penalties and Attorneys Fees.”  Kearns appealed, and, in case number
 97-L-50571
, the circuit court confirmed the order of the Commission.  Kearns timely appealed the circuit court’s order.

On February 25, 1998, Kearns filed in the circuit court a Petition for Judgment on Award pursuant to section 19(g) 
of the Act (820 ILCS 305/19(g)
 (West 1998))
.
  On May 5, 1998, the circuit court ordered the parties to brief the issue “of whether [Kearns’] claim falls under the ’willful and malicious’ exception to the Bankruptcy Code, 11 U.S.C. §§523(a)(6).”  Kearns therefore filed a Petition to Determine Dischargeability on September 22, 1998, and Hlady responded in turn. Kearns argued that his workers’ compensation claim was excepted from the bankruptcy discharge, since the claim allegedly arose out of Hlady’s intentionally tortious conduct.  In case number
 98-L-50183
, the circuit court denied Kearns’ petitions, finding that Kearns’ underlying claim was discharged by the bankruptcy order of February 1990.  Kearns timely appealed that decision, and the appeals from matters
 97-L-50571
 and 
98-L-50183
 were consolidated before this court.

II.  ANALYSIS

The main issue on appeal is whether or not Kearns’ workers’ compensation claim was discharged by the bankruptcy order of February 1990.  Before we reach that issue, however, we must first determine whether the circuit court had jurisdiction to consider Kearns’ Petition to Determine Dischargeability.  The reason we are concerned with the circuit court’s jurisdiction, rather than that of the Commission, is because the Commission did not decide whether Kearns’ claim was discharged by the bankruptcy order when it ruled on Kearns’ motion for attorney fees and penalties.  At the Commission level, Hlady did not raise the bankruptcy discharge as an affirmative defense to Kearns’ claim itself (see 
Mendiola
, 99 B.R. at 870); rather, Hlady raised the discharge in an attempt to show that he had a reasonable basis for nonpayment of the arbitration award.  Thus, the first time the parties actually litigated the dischargeability issue was after the circuit court ordered the parties to brief that issue.

In considering the jurisdictional issue, a review of the relevant portions of the Bankruptcy Code becomes necessary.  Hlady filed for Chapter 7 bankruptcy, and his petition was granted.  Section 727(b) of the Bankruptcy Code (11 U.S.C. §727(b) (1990)) defines the scope of a Chapter 7 debtor’s discharge.  Under that section, a discharge “discharges the debtor from all debts that arose before the date of the order for relief,” except as provided in section 523 (11 U.S.C. §523 (1990)).

Section 523(a) provides that “[a] discharge under section 727 *** does not discharge an individual from any debt” specified in the ten subsections of section 523(a).  11 U.S.C. §523 (1990).  Section 523 divides the discharge exceptions into two categories--

those listed in sections 523(a)(2), (4) and (6), and all others.  The “all others” category includes the following: debts arising from taxes (subsection (1)), alimony and child support (subsection (5)), fines or penalties (subsection (7)), educational loans (subsection (8)), judgments from drunk driving cases (subsection (9)) and debts that could have been, but were not, discharged in a prior bankruptcy proceeding (subsection (10)).  See 11 U.S.C. §§523(a)(1), (5), (7-10) (1990).

The debts listed in sections 523(a)(2), (4) and (6) make up the second category of debt--debts arising from various intentional torts.  This category includes debts incurred by false pretenses, fraud or use of false financial statements (subsection (2)); debts incurred by defalcation by a fiduciary, embezzlement or larceny (subsection (4)); and debts for willful and malicious injury (subsection (6)).  See 11 U.S.C. §§523(a)(2), (4), (6) (1990).  Since Kearns alleged only that he suffered injuries resulting from Hlady’s willful and malicious conduct (a section 523(a)(6) allegation), we must concern ourselves only with how courts treat parties claiming to be intentional tort creditors.

Section 523(c) provides that, where the debt 
was listed
 on the debtor’s bankruptcy schedule, a debt of the kind listed in section 523(a)(2), (4) or (6) is discharged unless the creditor files a complaint in the bankruptcy court to determine its dischargeability within a strict time limit of 60 days after the first meeting of creditors.  11 U.S.C. §523(c) (1990); Fed. R. Bankr. P. 4007(c).  Pursuant to section 523(c), the bankruptcy court has exclusive jurisdiction to determine whether such a scheduled debt was discharged. 
 11 U.S.C. §523(c) (1990); 
Mendiola
, 99 B.R. at 866.

However, where a debt arising from an intentional tort 
was not listed
 on the bankruptcy schedule, section 523(a)(3)(B) controls, and no limitations period for contesting dischargeability exists.  
In re McKinnon
, 165 B.R. 55, 56 n.7 (Bankr. D. Me. 1994).  Section 523(a)(3)(B) provides in pertinent part:

“(a) A discharge under section 727 *** does not discharge an individual from any debt--

* * *

(3) neither listed nor scheduled ***, in time to permit--

* * *

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had actual notice or actual knowledge of the case in time for such timely filing and request[.]”

The reason Congress enacted section 523(a)(3)(B) was that, “[w]ithout the type of special accommodation for omitted debts found at § 523(a)(3)(B), a crafty debtor who has defrauded a customer could work a second fraud by omitting the debt from the schedules until after the deadline for contesting dischargeability.”  Lauren A. Helbling & Hon. Christopher M. Klein, 
The Emerging Harmless Innocent Omission Defense to Nondischargeability under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts
, 69 AM. BANKR. L.J. 33, 44 (Winter 1995).  An intentional tort creditor may seek a determination of nondischargeability regardless of whether the underlying bankruptcy proceeding was an “asset case” or a “no-asset case.”  Helbling & Klein, 
The Emerging Harmless Innocent Omission Defense
, 69 AM. BANKR. L.J. at 43.

Most importantly for our purposes, in section 523(a)(3)(B) actions, “state courts enjoy concurrent jurisdiction with the bankruptcy court to determine dischargeability.”  
First Community Bank of West Frankfort v. Ohio Casualty Insurance Co.
, 154 Ill. App. 3d 133, 136 (1987).  Accord 
Mendiola
, 99 B.R. at 868 n.6
 (interpreting 11 U.S.C. §523(c) (1990)); 
In re Keenom
, 231 B.R. 116, 126-27 (Bankr. M.D. Ga. 1999)
.

In the instant case, Hlady did not list Kearns’ claim on his bankruptcy schedule, as he was obligated to do.  See 
In re Knapp
, 179 B.R. 106, 110 (1995).  Furthermore, Kearns alleged in his Petition to Determine Dischargeability (a) that his injuries arose from Hlady’s willful and malicious conduct and (b) that he (Kearns) was never notified of the bankruptcy proceeding until Hlady responded to the motion for attorney fees and penalties.  Thus, based on his Petition to Determine Dischargeability, Kearns’ claim fell within the purview of section 523(a)(3)(B).  The circuit court therefore had jurisdiction to determine whether Kearns’ claim was discharged by the bankruptcy order of February 1990.  See 
First Community Bank
, 154 Ill. App. 3d at 136; 
Mendiola
, 99 B.R. at 866.

Though Kearns may have properly pleaded his claim, proving it was a different matter altogether.  In order to succeed on a petition to determine dischargeability, a creditor must show two things: first, that he was not listed or scheduled and did not have actual notice of the case in time to file a complaint under section 523(c) of the Bankruptcy Code (11 U.S.C. §523(c) (1990)) and Bankruptcy Rule 4007(c); and second, that his claim met the criteria for nondischargeability under section 523(a)(2), (4) or (6).  See 
In re Anderson
, 72 B.R. 495, 497 n.5 (Bankr. D. Minn. 1987).  Hlady essentially admits that he failed to schedule Kearns’ claim and that Kearns lacked actual notice of the bankruptcy discharge.  The issue therefore becomes whether Kearns suffered a “willful and malicious injury” within the meaning of section 523(a)(6).  If so, then Kearns’ claim was excepted from the bankruptcy discharge.

The Supreme Court recently interpreted the phrase “willful and malicious injury” from section 523(a)(6).  It observed that “[t]he word ’willful’ in (a)(6) modifies the word ’injury,’ indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.”  
Kawaauhau v. Geiger
, 523 U.S. 57, __, 140 L. Ed. 2d 90, 95, 118 S. Ct. 974, 977 
(1998).  Thus, the Court agreed with the Eighth Circuit that section 523(a)(6) covers “only acts done with the actual intent to cause injury.”  
Kawaauhau
, 523 U.S. at __, 140 L. Ed. 2d at 95, 118 S. Ct. at 977.

The determination of whether a person acted willfully and maliciously involves an inquiry into that person’s intent, which is a question of fact.  
Waugh v. Eldridge
, 95 F.3d 706, 710 (8
th
 Cir. 1996).  Given the unique procedural history of the case, we find that the circuit court was obliged to defer to the Commission’s factual findings in deciding whether or not Hlady intended to injure Kearns, even though the Petition to Determine Dischargeability was filed in the circuit court.  This is because Kearns’ claim--the claim sought to be excepted from the bankruptcy discharge--was a workers’ compensation case, and, as such, the Commission was responsible for determining the facts of the case.  
Peabody Coal v. Industrial Comm’n
, 259 Ill. App. 3d 356, 358 (1994).  Like the circuit court, we must also defer to the factual determinations of the Commission.

In short, our standard of review is as follows: we may only reverse the circuit court’s ruling on the Petition to Determine Dischargeability if the Commission’s factual finding regarding Hlady’s intent to injure Kearns was against the manifest weight of the evidence. 
 For a finding to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent.  
Flynn v. Industrial Comm’n
, 302 Ill. App. 3d 695, 701 (1998).

The Commission found that Kearns’ “sustained 
accidental
 injuries arising out of and in the course of his employment.”  (Emphasis added.)  At arbitration, Kearns gave the following explanation as to how he was injured:

“[I]t was getting close to 8:00 o’clock [
sic
], our closing time[,] and Mr. Hlady *** had a gyros knife and put it in my face and said you better be done [filling the condiment bar] by 8:00 o’clock [
sic
], and when he put the knife in my face instinctively I grabbed his hand, because I had it like this and he jerked away and I severed my thumb.

THE ARBITRATOR:  Your left thumb[?]

THE WITNESS:  Yes, sir.

THE ARBITRATOR:  Was this horse play, was he kidding or what?

THE WITNESS:  I believe he was kidding.  I don’t think he meant me any harm or danger.”

Kearns’ testimony clearly supports the Commission’s finding that Kearns suffered accidental injuries.  That finding was therefore not against the manifest weight of the evidence.

The record shows that Kearns sustained accidental, rather than willful and malicious, injuries.  The circuit court therefore did not err in finding that Kearns’ workers’ compensation claim was not of a kind specified in section 523(a)(6) and that Kearns’ claim was not excepted from Hlady’s bankruptcy discharge.  See 
Kawaauhau
, 523 U.S. at __, 140 L. Ed. 2d at 97, 118 S. Ct. at 978 (“debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)”).

Since Kearns’ claim was discharged by the bankruptcy order, Hlady’s nonpayment of the arbitration award could not have been unreasonable and vexatious.  Accordingly, the Commission’s denial of Kearns’ motion for attorney fees and penalties was not against the manifest weight of the evidence.

Kearns also argues (in little more than half of a page) that Hlady waived the bankruptcy order as an affirmative defense to the motion for attorney fees and penalties, since Hlady did not raise the bankruptcy defense at the arbitration hearing.  Kearns, nonetheless, failed to raise this waiver argument before the Commission, and, as such, his argument is waived.  Even if we were to address Kearns’ argument, it would still fail.  First, there is nothing in the record suggesting that Hlady had actual or constructive notice of the March 1993 arbitration hearing.  If Hlady was not aware of the hearing, he could not have raised the defense there.  Second, a bankruptcy discharge “is a defense that presumably could even be raised for the first time on appeal.”  Helbling & Klein, 
The Emerging Harmless Innocent Omission Defense
, 69 AM. BANKR. L.J. at 50.  As Kearns fails to cite any authority involving a bankruptcy case to the contrary, his argument fails.

We note parenthetically that if Hlady committed an intentional tort against Kearns, then Kearns’ injuries would not be compensable under the 
Act
 (820 ILCS 305/11
 (West 1994))
, since Hlady was Kearns’ employer, and since only accidental injuries are compensable under the Act.  See 
Meerbrey v. Marshall Field and Company, Inc.
, 139 Ill. 2d 455, 465 (1990) (where employer commits an intentional tort against employee, resulting claim does not fall within scope of Workers’ Compensation Act); 
Collier v. Wagner Castings Co.
, 81 Ill. 2d 229, 239
 (1980) (same).

III.  CONCLUSION

In 
97-L-50571
, the circuit court of Cook County
 confirmed the Commission’s decision denying Kearns’ motion for 
attorney fees and penalties
.  
In 
 
98-L-50183
, 
the circuit court found that Kearns’ workers’ compensation claim against Hlady was discharged by the bankruptcy order
.
  For the foregoing reasons, we affirm both 
orders.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, HOLDRIDGE and RARICK
, JJ., concur.