No. 2--06--0549    Filed: 4-27-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LAWRENCE P. NEAL and DAWN LUEBERS NEAL, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 02--L--907 |
| OAK BROOK MANAGEMENT CORPORATION, | ) ) ) ) | |
| Defendant | ) ) | Honorable Margaret J. Mullen, |
| (Robert F. Smith, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Lawrence P. Neal and Dawn Luebers Neal, appeal from an order of the circuit court of Lake County, granting the motion of Robert F. Smith to be dismissed as a defendant because the relevant debt was discharged in bankruptcy. We hold that the trial court erred in ruling that the debt was discharged, and we therefore reverse and remand.

Plaintiffs sued Oak Brook Management Corp. (OBMC) and Smith for common-law fraud, consumer fraud, and breach of contract. They filed their complaint on November 8, 2002. On March 12, 2003, the trial court entered an order staying the case against Smith because he had filed

for protection under chapter 11 (11 U.S.C. §1101 et seq. (2000)) of the United States Bankruptcy Code (11 U.S.C. §101 et seq. (2000)).[1] OBMC answered the complaint on March 27, 2003.

On February 17, 2004, Smith moved to be dismissed from the case under section 2--619(a)(6) of the Code of Civil Procedure (735 ILCS 5/2--619(a)(6) (West 2004)). That section allows the dismissal of an action when the claim involved is barred by a discharge in bankruptcy. He stated that he filed for bankruptcy protection on April 25, 2002, and had "amended the schedules attached to his bankruptcy petition to include Plaintiffs' pre-petition claim." The schedules attached as an exhibit show a filing date of December 12, 2002. He received a discharge. Another exhibit is a copy of a discharge order entered on August 11, 2003, under section 1141(d) of the Bankruptcy Code (11 U.S.C. §1141(d) (2000))--a chapter 11 discharge. Smith asserted that "[s]ince Plaintiffs' claim against Smith was listed in Smith's schedules and since Plaintiffs did not object to the discharge of Smith, Plaintiffs' claims against Smith have been discharged and Plaintiffs are enjoined from continuing the instant action against Smith."

Plaintiffs responded, arguing that the debt was excepted from discharge under section 523(a)(3)(B) of the Bankruptcy Code (11 U.S.C. §523(a)(3)(B) (2000)). They asserted that the court should take judicial notice that Smith's meeting of creditors took place on May 30, 2002. They noted that, under Rule 4007(c) of the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P. 4007(c)), in bankruptcy proceedings the deadline for filing a complaint to determine the dischargeability of a debt is 60 days after the meeting of creditors. Thus, they argued, the last day for filing a complaint

---

[1]The Bankruptcy Code as a whole (11 U.S.C. §101 et seq. (2000)), is Title 11 of the United States Code. Smith's case, although he is an individual, was under chapter 11 (11 U.S.C. §1101 et seq. (2000)), familiar as the provision governing business reorganizations.

was July 30, 2002. Further, because Smith did not add their claims to the schedule until December 12, 2002, they did not have an opportunity to object to the dischargeability of the debt, and it became nondischargeable under section 523(a)(3)(B).

Smith replied that, when a creditor is added to a petition, the creditor then has a "reasonable time" to object to dischargeability and that, if he or she does not, the debt is discharged. He noted that "some courts" have held that 60 days is a reasonable time.

The court granted Smith's motion to dismiss on March 8, 2005, and plaintiffs timely appealed.

We hold that the trial court erred in granting Smith's motion. It misinterpreted the applicable bankruptcy law. The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure provide that amendments to schedules do not alter the deadlines for filing bankruptcy court complaints to determine the dischargeability of fraud debt. The cases Smith has cited do not alter this rule. Consequently, plaintiffs' failure to file a complaint to determine dischargeability in bankruptcy court did not render the debt dischargeable.

Initially, we note that, although the issues in this appeal are almost entirely ones of bankruptcy law, this court and the trial court have subject matter jurisdiction. Principally at issue is whether the discharge exception of section 523(a)(3)(B) allows plaintiffs' suit to proceed in the face of Smith's discharge. Whether state courts have jurisdiction concurrent with that of the bankruptcy courts to decide whether debts are excepted from discharge under section 523(a)(3)(B) has been in contention in the bankruptcy courts. Compare In re Padilla, 84 B.R. 194, 196-97 (Bankr. D. Colo. 1987) (holding that jurisdiction to decide whether a debt belongs to one of the classes that would bring it within the scope of section 523(a)(3)(B) lies exclusively in the bankruptcy courts),

with In re Strano, 248 B.R. 493, 501-03 (Bankr. D.N.J. 2000) (holding that, although the bankruptcy court is the preferred forum because of its greater expertise, state courts have concurrent jurisdiction). We find persuasive In re Strano's careful analysis of the relevant statutory provisions concluding that the provisions that give bankruptcy courts exclusive jurisdiction over closely related issues do not apply to section 523(a)(3)(B). Adopting that analysis, we find that this court and the trial court have subject matter jurisdiction.

Smith asserts that plaintiffs' claims were discharged because plaintiffs did not seek a determination of dischargeability in bankruptcy court. More specifically, he asserts that his amendment to his schedules forced plaintiffs to file a complaint in bankruptcy court to preserve their claims. That is not the law. As we discuss, debts due to fraud, akin to that alleged here,[2] usually fall within a group of restricted exceptions to discharge--exceptions that require the creditor to file a timely complaint in bankruptcy court to determine dischargeability or else have those debts automatically discharged. Ordinarily, for the required complaint to be timely, a creditor must file it within 60 days of the date originally set for the meeting of creditors. Plaintiffs never filed a complaint in bankruptcy court. However, bankruptcy law creates an exception to that requirement in cases where the creditor does not have notice of the bankruptcy in time to file a timely complaint, thus creating an exception to an exception to an exception. Smith does not deny that plaintiffs lacked notice of the bankruptcy in time to file a complaint within the 60-day period. Nevertheless, he asserts that bankruptcy law required plaintiffs to file a complaint within a reasonable time after he amended his schedules to list plaintiffs as creditors. In support of his position, Smith points to

---

[2]We do not resolve whether plaintiffs' claims are within bankruptcy law's definition of fraud debt.

certain cases that hold that bankruptcy courts may set a time limit for the filing of the required complaints when they reopen a case to allow a debtor to amend his or her schedules to include omitted creditors. As we will explain, these cases are inapposite. Although the cases may be correct that courts can set such limits, the law is clear that new limits do not automatically arise when a debtor amends his or her schedules. Thus, plaintiffs' failure to file a complaint when Smith amended his schedules did not cause their claims to be discharged.

We start our consideration of the applicable bankruptcy law by considering the scope of the section 523(a)(3)(B) exception to discharge. Section 523(a) limits the dischargeability of an individual's debts under all chapters of the Bankruptcy Code. 11 U.S.C. §523(a) (2000). When Smith filed for protection, section 523(a) contained 18 subsections describing the types of nondischargeable debt. Three of these subsections describe debt arising from certain kinds of intentional torts, including some frauds and misrepresentations; we will call this "fraud debt." Fraud debts are the restrictedly dischargeable debts--the debts for which a creditor must generally file a complaint to avoid their discharge.[3]

The sections describing fraud debts are 523(a)(2), (a)(4), and (a)(6). 11 U.S.C. §523(a)(2), (a)(4), (a)(6) (2000). The restriction on their dischargeability arises from section 523(c)(1). The effect of that section is to require a creditor to file an adversary complaint in bankruptcy court to preserve their nondischargeability. See 11 U.S.C. §523(c)(1) (2000). (We will thus refer to the complaints this section requires as "section 523(c)(1) complaints.") Section 523(c)(1) itself contains an exception: it provides for the discharge of fraud debt absent a proper complaint "[e]xcept as

---

[3]We ignore the existence of section 523(a)(15) (11 U.S.C. §523(a)(15) (2000)), concerning certain debts arising out of divorce or separation, as that section is irrelevant here.

provided in subsection (a)(3)(B) of this section." 11 U.S.C. §523(c)(1) (2000). As we explain, sections 523(a)(3)(B) and 523(c)(1), read together, limit the dischargeability of fraud debt, even when a creditor has not filed a section 523(c)(1) complaint, to cases where the creditor has received acceptable notice of the bankruptcy. Debts falling into the other categories excepted from discharge are not discharged despite a creditor's inaction in the bankruptcy proceedings, and a creditor can raise the nondischargeability of those debts for the first time in a state court action to collect them. See, e.g., In re Walker, 195 B.R. 187, 203-04 (Bankr. D.N.H. 1996).

Section 523(a)(3) limits the dischargeability of all debts the debtor did not properly list on his or her bankruptcy schedules.[4] It contains two very similar subsections. Section 523(a)(3)(A) applies to debt other than fraud debt. It bars discharge of a debt unless the debt was scheduled in time for the creditor to file a timely proof of claim, or unless the creditor had actual notice of the bankruptcy in time to file a timely proof of claim. The last day to file a timely proof of claim--the claims bar date--is thus the sole date critical to determining dischargeability under section 523(a)(3)(A). Section 523(a)(3)(B) applies to fraud debt. It bars discharge of such debts on the same conditions as section 523(a)(3)(A), but adds a further condition on which debt is nondischargeable: that the creditor be scheduled in time, or receive actual notice in time, to file a timely section

---

[4]The debt must have been "known to the debtor" for this section to apply. 11 U.S.C. §523(a)(3) (2000). However, Smith has never asserted that he did not know of plaintiffs' claims. Instead, he asserts that his initial failure to schedule them was inadvertent.

523(c)(1) complaint.[5]  Thus, section 523(a)(3)(B) creates two critical dates for determining the dischargeability of fraud debt: the claims bar date and the deadline for section 523(c)(1) complaints.

Rule 4007(c) sets a deadline for section 523(c)(1) complaints: 60 days after the first date set for the meeting of creditors required by section 341 (11 U.S.C. §341 (2000)).  Fed. R. Bankr. P. 4007(c).  (The trustee must set a date for a meeting of creditors 20 to 40 days after the debtor files his or her petition.  Fed. R. Bankr. P. 2003(a), Advisory Committee Note, subsection(a).)  The court, on a motion, may extend the deadline for filing such complaints, but the movant must file the motion before the deadline.  Fed. R. Bankr. P. 4007(c).  Rule 9006(b)(3) emphasizes this limitation on extensions of the deadline; it allows retroactive extensions of some deadlines, but provides that the "court may enlarge the time for taking action under Rule[] *** 4007(c) *** only to the extent and under the conditions stated in [that] rule[]" (Fed. R. Bankr. P. 9006(b)(3)).  Nevertheless, as we will discuss in more detail, a conflict of authorities exists regarding the power of the court to set new deadlines for section 523(c)(1) complaints after the original deadline has expired.

---

[5]As should be clear, section 523(a)(3) as a whole excepts from discharge <u>all</u> debts where the creditor did not have acceptable notice before the claims bar date.  Section 523(a)(3)(A) and claims bar dates have less overall significance than they initially suggest.  The most common cases, no-asset chapter 7 cases (see <u>In re Walker</u>, 195 B.R. at 196 n.11; Federal Judiciary, Bankruptcy Statistics, www.uscourts.gov/bnkrpctystats/statistics.htm), usually do not have claims bar dates, such that claims never become nondischargeable under section 523(a)(3)(A).  <u>E.g.</u>, <u>In re Mendiola</u>, 99 B.R. 864, 868 (Bankr. N.D. Ill. 1989).  However, this being a chapter 11 case, we presume the bankruptcy court set a claims bar date.  See Fed. R. Bankr. P. 3003(c)(3).  Nevertheless, the court may have set it too late to have any significance here; we have no evidence of what date it set.

Smith has not suggested that plaintiffs had notice such that they could have acted before the original deadline or that the bankruptcy court extended that deadline. Instead, he argues that, when he amended his schedules of creditors (and plaintiffs received notice), plaintiffs then had a reasonable amount of time to file a nondischargeability complaint in bankruptcy court.

The general rule is that, when creditors allege that debts are nondischargeable under section 523(a)(3)(B), they may litigate that issue in either state or bankruptcy court at any time. Courts have typically held that Rule 4007(c) does not limit the time for filing such complaints. For instance, the Ninth Circuit Court of Appeals, in In re Staffer, 306 F.3d 967, 971-72 (9th Cir. 2002), held that bankruptcy proceedings under section 523(a)(3)(B) are governed by Rule 4007(b) (Fed. R. Bankr. P. 4007(b)), which allows a creditor to file a complaint at any time. Further, parties can litigate whether a debt falls within the scope of section 523(a)(3)(B) in state court, without bankruptcy court involvement. E.g., In re Mendiola, 99 B.R. at 868 n.6; see also L. Helbling & C. Klein, The Emerging Harmless Innocent Omission Defense to Nondischargeability under Bankruptcy Code §523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts, 69 Am. Bankr. L.J. 33, 43-44 (1995).

Section 523 and the bankruptcy rules make clear that a debtor's late amendment to his or her schedules of creditors cannot by itself make the debts dischargeable if they are already nondischargeable under section 523(a)(3). First, section 523(a)(3) states that debts are not discharged unless they are "scheduled *** in time" to permit filing of a proof of claim or complaint. 11 U.S.C. §523(a)(3) (2000). The inescapable implication is that a debt can be scheduled too late to be discharged. This conclusion is further confirmed by the comments to the bankruptcy rules. Rule 1009 allows a debtor to amend a voluntary schedule "as a matter of course at any time before

the case is closed." Fed. R. Bankr. P. 1009(a). However, an Advisory Committee Note following the rule states that "[i]f a list or schedule is amended to include an additional creditor, the effect on the dischargeability of the creditor's claim is governed by the provisions of §523(a)(3) of the Code." Fed. R. Bankr. P. 1009(a), Advisory Committee Note. The liberal allowance for amendment thus does not allow a debtor to evade the requirement of timely notice to a creditor.

Smith asserts that a group of cases, of which In re Thompson, 152 B.R. 24 (E.D.N.Y. 1993), is the most important, requires us to conclude that, if a creditor does not file a section 523(c)(1) complaint within a "reasonable time" after a debtor has scheduled that creditor, the debt is discharged. These cases do not create an exception to the rule regarding amendments. They address a wholly different situation: the reopening of a no-asset case under chapter 7 of the Bankruptcy Code. E.g., In re Thompson, 152 B.R. at 26.

The conclusion that these cases have no application here is a straightforward consequence of bankruptcy law. Nevertheless, to explain why this is so, we must describe the context in which the courts decided those cases.

Many, perhaps now all, bankruptcy courts agree that, in typical no-asset chapter 7 cases, claims cannot become nondischargeable under section 523(a)(3)(A) (the section for which the claims bar date is critical) even if the debts remain unscheduled. See In re Walker, 195 B.R. at 198-200; L. Helbling & C. Klein, The Emerging Harmless Innocent Omission Defense to Nondischargeability under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts, 69 Am. Bankr. L.J. 33, 51-54 (1995). This is so because, when the trustee finds that no assets are available, the clerk can (and usually does) notify creditors that no claims bar date will be set unless the trustee later discovers distributable assets.

E.g., In re Mendiola, 99 B.R. at 867. With no claims bar date, a proof of claim cannot be untimely, and section 523(a)(3)(A) cannot apply.

More controversial is what action a bankruptcy court should take when a debtor has failed to schedule a creditor in a no-asset chapter 7 case. In re Mendiola represents one position. It held that reopening the case serves no purpose; the dischargeability of all claims is already fixed. If the court has set no claims bar date, section 523(a)(3)(A) cannot make claims nondischargeable. Further, because under Rule 4007(b) a court cannot reset the time to file a section 523(c)(1) complaint, reopening the case cannot change the nondischargeability of claims under section 523(a)(3)(B). In re Mendiola, 99 B.R. at 868 n.6. Thus, cases in this line hold that, where the creditor lacked the required notice, once the complaint deadline passes without extension, a court can do nothing to alter the nondischargeability of a bona fide fraud claim. The other line of decisions, which includes In re Thompson, has favored allowing the debtor to reopen the case (In re Thompson, 152 B.R. at 26), at least when the debtor has acted in good faith and the creditors will not be prejudiced. See, e.g., In re Candelaria, 121 B.R. 140, 142, 144 (E.D.N.Y. 1990). Although one reason cited for allowing this is the desire for accuracy in the debtor's schedules (In re Candelaria, 121 B.R. at 142), the idea that newly scheduled creditors should have a limited time to file section 523(c)(1) complaints is a common thread in these cases. See In re Walker, 195 B.R. at 208 (holding that it had the power to set a 90-day deadline for the filing of section 523(c)(1) complaints in reopened cases); In re Maddox, 62 B.R. 510, 514 (Bankr. E.D.N.Y. 1986) (holding that a creditor added after the court reopens a case "must be accorded a reasonable period of time within which to object to the dischargeability of the debt owed it under 523(a)(2), (4) and (6)").

Of the cases in this line, only one that we have located, In re Walker, gives an explanation of the source of the court's power to set a new deadline. In re Walker, 195 B.R. at 205-08. That decision finds the source primarily in the court's power to equitably toll Rule 4007(c)'s time limit for the filing of section 523(c)(1) complaints. At the risk of oversimplification, we summarize the reasoning: if the court can toll the Rule 4007(c) deadline, it can deem that the late receipt of notice did not prevent a creditor from timely filing a complaint, meaning that section 523(a)(3)(B) will not apply.

The position on Rule 4007(c) in In re Walker is on one side of a split of authority. The bankruptcy courts are divided on whether a court can waive the time limit of Rule 4007(c) for equitable reasons. See In re Rowland, 275 B.R. 209, 212-15 (Bankr. E.D. Pa. 2002) (reviewing the conflicting authorities). If In re Walker is correct about the source of a court's power to set new deadlines for section 523(c)(1) complaints, as we believe it is, then only those courts that hold that the Rule 4007(c) time limit is waivable should allow new deadlines.

We need not attempt to resolve this conflict; regardless of the position we might take on Rule 4007(c), Smith has not identified anything that occurred in his bankruptcy case that extended the time to file a section 523(c)(1) complaint. The cases Smith cites do not contradict the provisions that make an amendment ineffective to change a debt's dischargeability. That a court may use its equitable powers to set a new deadline does not mean that a debtor's act of amending a schedule of creditors also sets a new deadline. The reopening of a case is a matter for the court's discretion (In re Candelaria, 121 B.R. at 142), whereas the amending of schedules while the case is open is something the debtor may do "as a matter of course" (Fed. R. Bankr. P. 1009(a)). The addition of new creditors may be largely unproblematic in a no-asset chapter 7 case, such that the importance

of the court's discretion is not obvious. In a chapter 11 case, such as the one at issue here, the importance of discretion becomes obvious. When a creditor is scheduled late in such a case, he or she can be irreversibly deprived of the critical rights to participate in negotiation of and to vote on the debtor's plan of reorganization. In re Smith, 21 F.3d 660, 664-65 (5th Cir. 1994). When a creditor has lost important rights, a court may have serious concerns about the equity of extending a deadline for the debtor's benefit. (These concerns may be so serious that equity would preclude a court from exercising its discretion to reset deadlines, even if it has that power. See In re Smith, 21 F.3d at 663-65 (discussing the disruptiveness of a late claim in a chapter 11 case ).) Thus, we conclude that mere amendment of the schedules does not affect the deadline for a section 523(c)(1) complaint.

Having clarified the applicable bankruptcy law, we turn to Illinois law and the sufficiency of Smith's motion under section 2--619 of the Code of Civil Procedure. We review de novo a dismissal of claims under section 2--619. Hartshorn v. State Farm Insurance Co., 361 Ill. App. 3d 731, 735 (2005). As noted, section 2--619(a)(6) provides for the dismissal of an action when the defendant can show that the claims involved have been discharged in bankruptcy. 735 ILCS 5/2--619(a)(6) (West 2004). Smith showed that he had a discharge; the question then becomes how the burden lies to show that plaintiffs' claims fell within the section 523(a)(3)(B) exception to discharge. The supreme court has discussed the parallel question with respect to section 2--619(a)(9) (735 ILCS 5/2--619(a)(9) (West 2004)) (concerning a claim barred by some other affirmative matter). "Once a defendant satisfies [the] initial burden of going forward on the section 2--619(a)(9) motion to dismiss, the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is 'unfounded or requires the resolution of an essential element of material fact before

it is proven.' " Epstein v. Chicago Board of Education, 178 Ill. 2d 370, 383 (1997), quoting Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116 (1993). "The plaintiff may establish this by presenting 'affidavits or other proof.' " Epstein, 178 Ill. 2d at 383, quoting 735 ILCS 5/2--619(c) (West 1992). We conclude that Smith's showing that he received a discharge was sufficient without his also showing that no exception to discharge applied. Given that there were 18 separate exceptions, requiring him to show that none applied would be a daunting task that would undermine the purpose of a discharge.

Nevertheless, adequate evidence existed to require the court to deny Smith's motion. The motion itself gave the necessary support for the existence of a section 523(a)(3)(B) exception to discharge, and thus Smith would need to prove new facts to avoid that exception applying. Smith filed his bankruptcy petition on April 25, 2002. Under Rule 2003(a), the trustee must call the meeting of creditors no more than 40 days after the debtor files the case. See Fed. R. Bankr. P. 2003(a). Thus, the meeting of creditors should have been scheduled for no later than June 4, 2002. Under Rule 4007(c), absent an extension, section 523(c)(1) complaints were due no later than 60 days after the first date set for the meeting of creditors, or no later than August 5, 2002 (taking into account the sixtieth day's falling on a weekend). Smith filed his amended schedules on December 12, 2002. Given that Smith's own motion shows that his amendments came too late to avoid section 523(a)(3)(B) nondischargeability under the default deadline, an issue of fact existed as to whether the court had extended the deadline.

We recognize that a reasonable interpretation of Epstein and section 523(a)(3)(B) would require plaintiffs to supply affidavits to show that their claims fall within the bankruptcy law

definition of fraud debt,[6] something they did not do. However, the parties have never raised the point; indeed, Smith has actively pushed the argument in a different direction. Thus, we do not further address this potential issue.

For the reasons we have stated, we reverse the order dismissing Smith as a defendant and remand the matter for further proceedings on the action.

Reversed and remanded.

GROMETER, P.J., and CALLUM, J., concur.

---

[6]"[T]o establish the §523(a)(3)(B) exception, a creditor must show that he actually had grounds under §523(a)(2), (4) or (6) and that the debtor's failure to schedule him deprived him of the opportunity to assert these grounds at the proper time." In re Zablocki, 36 B.R. 779, 782 (Bankr. D. Conn. 1984).